1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                   SOUTHERN DISTRICT OF CALIFORNIA

10

11  JUNE THEPSOMBANDITH,              )  Civil No. 07cv2248 BEN (RBB)
                                      )
12                  Petitioner,       )  **REPORT AND RECOMMENDATION**
                                      )  **DENYING PETITION FOR WRIT OF**
13  v.                                )  **HABEAS CORPUS [DOC. NO. 1]**
                                      )
14  V.M. ALMAGER,                     )
                                      )
15                  Respondent.       )
    _____   )

16

17        Petitioner June Thepsombandith, a state prisoner proceeding

18  pro se and in forma pauperis, filed a Petition for Writ of Habeas

19  Corpus pursuant to 28 U.S.C. § 2254 on November 27, 2007 [doc. no.

20  1], stating three claims:  (1) prosecutorial misconduct, (2)

21  ineffective assistance of trial counsel for failing to object to

22  the prosecutor's argument, and (3) a due process violation at

23  sentencing.  (Pet. 6-7.)

24        Respondent V.M. Almager filed an Answer on September 30, 2008

25  [doc. no. 13], asserting (1) the state courts reasonably rejected

26  Petitioner's claims that the prosecutor committed misconduct and

27  his counsel was ineffective for failing to object; (2) this Court

28  should reject Petitioner's challenge to his upper term sentence;

and (3) Petitioner is not entitled to an evidentiary hearing. (Answer Attach. #1 Mem. P. & A. 6, 9, 16.)  Petitioner filed a Traverse on October 28, 2008 [doc. no. 17], which included a request for an evidentiary hearing.  The Court has reviewed the Petition, Respondent's Answer, Petitioner's Traverse, and the lodgments.  For the reasons discussed below, the Court recommends that Thepsombandith's Petition be **DENIED**.

## I.  FACTUAL BACKGROUND

June Thepsombandith began dating Kathy Sayrath in December of 2004.  (Lodgment No. 5, Rep.'s Tr., vol. 3, 64, Oct. 11, 2005.) He lived in a one-room "shack" located in the backyard of his parents' house.  (Id. at 64-65.)  On Friday, March 18, 2005, Thepsombandith and Sayrath were alone inside the shack; Sayrath was on the telephone with a friend and stated that she wanted to end her relationship with Thepsombandith.  (Id. at 66-67.)

Thepsombandith overheard this conversation and became very upset.  (Id. at 67.)  He told Sayrath to hang up the telephone, which she did.  (Id.)  Thepsombandith picked up a golf club and repeatedly struck Sayrath in the legs, thigh, arm, and back while she was sitting on the couch.  (Id. at 68-71.)  When Sayrath put her arm up to defend herself from the blows, he struck her right arm with the club and broke it between her wrist and elbow.  (Id. at 70; Lodgment No. 6, Rep.'s Tr., vol. 4, 304, Oct. 12, 2005.)

Thepsombandith stomped on Sayrath and kicked her; the beating continued until Sayrath lied and told Thepsombandith she was pregnant with his child.  (Lodgment No. 5, Rep.'s Tr., vol. 3, 71-72.)  Sayrath was subsequently treated at the hospital emergency

room for her fractured right forearm.  (Id. at 70; Lodgment No. 6, Rep.'s Tr., vol. 4, 304.)

On Monday, March 21, 2005, Sayrath went back to Thepsombandith's shack to recover her clothes.  (Lodgment No. 5, Rep.'s Tr., vol. 3, 81.)  Sayrath's two cousins, Sherry Gonzales and Jeniffer Souphy, accompanied her.  (Id. at 81, 182.)  The cousins waited outside in the backyard while Sayrath entered the shack.  (Id. at 84-85, 187-88.)  Thepsombandith was alone inside the shack when Sayrath entered.  (Id. at 85.)  He told Sayrath to sit down so they could talk and Sayrath complied.  (Id. at 85-86.)

During their brief conversation, Thepsombandith had a handgun next to him that was hidden underneath a towel.  (Id. at 86-87.)  He moved the towel to expose the handgun to Sayrath.  (Id. at 86-88.)  Thepsombandith grabbed the gun, stood up, and yelled at Sayrath that he was not afraid to shoot her and that he would shoot himself as well.  (Id. at 88-89.)  He held the barrel of the gun to Sayrath's temple while he threatened her.  (Id. at 89-90.)  Thepsombandith then pointed the gun in the air and fired one shot; Sayrath screamed, and Gonzales and Souphy -- who heard the commotion -- came running to the door of the shack to see what had happened.  (Id. at 90, 189, 210.)

Gonzales opened the door while both she and Souphy looked inside the shack.  (Id. at 210; Lodgment No. 6, Rep.'s Tr., vol. 4, 350.)  Gonzales observed Sayrath in a fetal position on the couch saying, "No," while Thepsombandith pointed the gun at Sayrath.  (Lodgment No. 6, Rep.'s Tr., vol. 4, 350.)

Petitioner then turned the gun and pointed it at Gonzales and said, "Are you going to be a fucking hero?"  (Lodgment No. 5,

Rep.'s Tr., vol. 3, 90-91.)  While Thepsombandith pointed the gun at her, Gonzales saw him cock back and release the slide of the gun.  (Lodgment No. 6, Rep.'s Tr., vol. 4, 351-52, 428-29.)  As Souphy began to back out of the doorway, Petitioner's father, mother, and grandfather appeared.  (Id. at 353; Lodgment No. 5, Rep.'s Tr., vol. 3, 192.)  Gonzales came out of the shack as well. (Lodgment No. 5, Rep.'s Tr., vol. 3, 194.)  When Thepsombandith's grandfather entered the shack, Sayrath left and the three women ran to their car.  (Id. at 91, 195.)

While leaving the scene in their car, the women were stopped by a police officer for failing to have a rear license plate. (Lodgment No. 5, Rep.'s Tr., vol. 3, 93; Lodgment No. 6, Rep.'s Tr., vol. 4, 357, 425.)  The women informed the police officer about what had just occurred at Thepsombandith's shack.  (Lodgment No. 5, Rep.'s Tr., vol. 3, 93-94; Lodgment No. 6, Rep.'s Tr., vol. 4, 427-29.)  Police searched the shack later that day and discovered a shell casing on top of a speaker and a bullet hole in the ceiling.  (Lodgment No. 5, Rep.'s Tr., vol. 3, 272-75.) Thepsombandith was not present during the search.  (Id. at 258; Lodgment No. 6, Rep.'s Tr., vol. 4, 431.)

Later that day, Thepsombandith called Gonzales and told her he thought she was his friend; he asked her, "Why did you call the cops?"  (Lodgment No. 6, Rep.'s Tr., vol. 4, 357, 431.) Thepsombandith asked Gonzales to pick him up from a nearby location.  (Id. at 358, 431.)  Instead, Gonzales passed this information along to the police.  (Id. at 431)  Police officers went to the address given by Gonzales and found Thepsombandith hiding in a closet.  (Lodgment No. 5, Rep.'s Tr., vol. 3, 258;

Lodgment No. 6, Rep.'s Tr., vol. 4, 432.)  Officers arrested

Thepsombandith.  (Lodgment No. 5, Rep.'s Tr., vol. 3, 262.)

## II.  PROCEDURAL BACKGROUND

The San Diego County District Attorney filed an information

on April 15, 2005, charging Petitioner with assault with a firearm

against Kathy Sayrath (count one) and Sherry Ann Gonzales (count

two) on March 21, 2005.  See Cal. Penal Code § 245(b) (West Supp.

2009); (Lodgment No. 1, Clerk's Tr., vol. 1, 5-6.)  The

information also accused Petitioner of discharging a firearm in a

grossly negligent manner, being a felon in possession of a

firearm, being a felon in possession of ammunition, and committing

assault with a deadly weapon by means of force likely to cause

great bodily injury.   See Cal. Penal Code §§ 245(a)(1), 246.3

(West Supp. 2009), 12021(a)(1), 12316(b)(1) (West 2000); (Lodgment

No. 1, Clerk's Tr., vol. 1, 5-6.)  The information made additional

allegations:  (1) As to counts one and two, Petitioner used a

firearm within the meaning of Cal. Penal Code § 12022.5(a); (2) as

to count six, Petitioner personally used a deadly weapon——a golf

club——within the meaning of Cal. Penal Code § 1192.7(c)(23); and

(3) as to count six, Petitioner inflicted great bodily injury

within the meaning of Cal. Penal Code § 12022.7(a).  (Lodgment No.

1, Clerk's Tr., vol. 1, 5-6.)

On October 13, 2005, a jury convicted Petitioner of all

charges and found all allegations true.  (Lodgment No. 2, Clerk's

Tr., vol. 2, 307-313.)  He admitted having two prison priors

within the meaning of §§ 667.5(b) and 668.  See Cal. Penal Code §§

667.5(b), 668 (West Supp. 2009); (Lodgment No. 2, Clerk's Tr. Vol.

1  2, 307, 314.)   The judge sentenced Petitioner to a prison term of

2  twenty-four years.  (Lodgment No. 2, Clerk's Tr. vol. 2, 319.)

3       Petitioner filed his opening brief in the California Court of

4  Appeal on June 5, 2006, and supplemented it eight weeks later.

5  (Lodgment No. 8, Appellant's Opening Br., People v.

6  Thepsombandith, No. D047885 (Cal. Ct. App. Dec. 12, 2006);

7  Lodgment No. 9, Appellant's Supplemental Opening Br., People v.

8  Thepsombandith, No. D047885 (Cal. Ct. App. Dec. 12, 2006).)  He

9  asserted in his opening brief that the "prosecutor committed

10 misconduct in argument by misstating the law of assault, and trial

11 counsel was ineffective for failing to object . . . ."  (Lodgment

12 No. 8, Appellant's Opening Br. 5, People v. Thepsombandith, No.

13 D047885.)  Petitioner also asserted he "was denied due process of

14 law by imposition of an increased term of imprisonment in

15 violation of Blakely v. Washington [542 U.S. 296 (2004)];

16 imposition of the prison prior enhancements was an impermissible

17 dual use of facts."  (Lodgment No. 9, Appellant's Supplemental

18 Opening Br. 1, People v. Thepsombandith, No. D047885.)

19      The California Court of Appeal affirmed the judgment in an

20 unpublished opinion filed December 12, 2006.  (Lodgment No. 13,

21 People v. Thepsombandith, No. D047885, slip op. at 1 (Cal. Ct.

22 App. Dec. 12, 2006).)  Thepsombandith filed a petition for review

23 in the California Supreme Court on January 16, 2007.  (Lodgment

24 No. 14, Pet. for Review, People v. Thepsombandith, No.

25 SD2006700554 (Cal. Jan. 16, 2007).)  On February 21, 2007, the

26 supreme court granted review of Thepsombandith's petition, but it

27 eventually dismissed the case on September 12, 2007.  (Lodgment

28 No. 15, People v. Thepsombandith, No. S149522, order 1 (Cal. Feb.

21, 2007); Lodgment No. 16, <u>People v. Thepsombandith</u>, No. S149522,

order 2 (Cal. Sept. 12, 2007) (en banc).)

### III.   STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act ("AEDPA"),

28 U.S.C.A. § 2244 (West 2008), applies to all federal habeas

petitions filed after April 24, 1996.  <u>Woodford v. Garceau</u>, 538

U.S. 202, 204 (2003) (citing <u>Lindh v. Murphy</u>, 521 U.S. 320, 326

(1997)).  AEDPA sets forth the scope of review for federal habeas

corpus claims:

> The Supreme Court, a Justice thereof, a circuit
> judge, or a district court shall entertain an
> application for a writ of habeas corpus in behalf of a
> person in custody pursuant to the judgment of a State
> court only on the ground that he is in custody in
> violation of the Constitution or laws or treaties of the
> United States.

28 U.S.C.A. § 2254(a) (West 2008); <u>see also</u> <u>Reed v. Farley</u>, 512

U.S. 339, 347 (1994); <u>Hernandez v. Ylst</u>, 930 F.2d 714, 719 (9th

Cir. 1991).  Because Thepsombandith's Petition was filed on

November 27, 2007, AEDPA applies to this case.  <u>See</u> <u>Woodford</u>, 538

U.S. at 204.

In 1996, Congress "worked substantial changes to the law of

habeas corpus."  <u>Moore v. Calderon</u>, 108 F.3d 261, 263 (9th Cir.

1997).  Amended § 2254(d) now reads:

> An application for a writ of habeas corpus on
> behalf of a person in custody pursuant to the judgment
> of a State court shall not be granted with respect to
> any claim that was adjudicated on the merits in State
> court proceedings unless the adjudication of the claim
> --
>
> (1) resulted in a decision that was contrary
> to, or involved an unreasonable application
> of, clearly established Federal law, as
> determined by the Supreme Court of the United
> States; or

1                (2) resulted in a decision that was based on
an unreasonable determination of the facts in
2                light of the evidence presented in the State
court proceeding.
3

4 28 U.S.C.A. § 2254(d) (West 2008).

5     To present a cognizable federal habeas corpus claim, a state

6 prisoner must allege that his conviction was obtained "in

7 violation of the Constitution or laws or treaties of the United

8 States."  28 U.S.C. § 2254(a).  A petitioner must allege that the

9 state court violated his federal constitutional rights.

10 Hernandez, 930 F.2d at 719; Jackson v. Ylst, 921 F.2d 882, 885

11 (9th Cir. 1990); Mannhalt v. Reed, 847 F.2d 576, 579 (9th Cir.

12 1988).

13     A federal district court does "not sit as a 'super' state

14 supreme court" with general supervisory authority over the proper

15 application of state law.  Smith v. McCotter, 786 F.2d 697, 700

16 (5th Cir. 1986); see also Lewis v. Jeffers, 497 U.S. 764, 780

17 (1990) (holding that federal habeas courts must respect a state

18 court's application of state law); Jackson, 921 F.2d at 885

19 (explaining that federal courts have no authority to review a

20 state's application of its law).  Federal courts may grant habeas

21 relief only to correct errors of federal constitutional magnitude.

22 Oxborrow v. Eikenberry, 877 F.2d 1395, 1400 (9th Cir. 1989)

23 (stating that federal courts are not concerned with errors of

24 state law unless they rise to level of a constitutional

25 violation).

26     The Supreme Court, in Lockyer v. Andrade, 538 U.S. 63

27 (2003), stated that "AEDPA does not require a federal habeas court

28 to adopt any one methodology in deciding the only question that

matters under § 2254(d)(1) -- whether a state court decision is

contrary to, or involved an unreasonable application of, clearly

established Federal law." (_Id._ at 71) (citation omitted).  In

other words, a federal court is not required to review the state

court decision _de novo_.  (_Id._)  Rather, a federal court can

proceed directly to the reasonableness analysis under §

2254(d)(1).  (_Id._)

The "novelty" in § 2254(d)(1) is "the reference to 'Federal

law, as determined by the Supreme Court of the United States.'"

_Lindh v. Murphy_, 96 F.3d 856, 869 (7th Cir. 1996) (en banc), _rev'd_

_on other grounds_, 521 U.S. 320 (1997).  Section 2254(d)(1)

"explicitly identifies only the Supreme Court as the font of

'clearly established' rules."  (_Id._)  "[A] state court decision

may not be overturned on habeas corpus review, for example,

because of a conflict with Ninth Circuit-based law."  _Moore_, 108

F.3d at 264.  "[A] writ may issue only when the state court

decision is 'contrary to, or involved an unreasonable application

of,' an authoritative decision of the Supreme Court."  (_Id._)

(citing _Childress v. Johnson_, 103 F.3d 1221, 1225 (5th Cir. 1997);

_Devin v. DeTella_, 101 F.3d 1206, 1208 (7th Cir. 1996); _Baylor v._

_Estelle_, 94 F.3d 1321, 1325 (9th Cir. 1996).)

Furthermore, with respect to the factual findings of the

trial court, AEDPA provides:

>        In a proceeding instituted by an application for a
> writ of habeas corpus by a person in custody pursuant to
> the judgment of a State court, a determination of a
> factual issue made by a State court shall be presumed to
> be correct.  The applicant shall have the burden of
> rebutting the presumption of correctness by clear and
> convincing evidence.

28 U.S.C.A. § 2254(e)(1).

## IV.   DISCUSSION

### A.   Prosecutorial Misconduct - Claim One

During Thepsombandith's trial, defense counsel misstated the law of assault in his closing argument when he explained that Sayrath did not know the gun was loaded until after Thepsombandith fired it:

> The knowledge of the deadly capability, such as it were of this firearm, was only known after the discharge.
>
> It never again was pointed at [Sayrath]. She never stated that the firearm was pointed at her again.
>
> I dare say that if that firearm had been pointed at her a second time, we'd have an assault on Kathy by means of a firearm.

(Lodgment No. 7, Rep.'s Tr., vol. 5, 522-23, Oct. 13, 2005.)

In the prosecutor's closing argument, he corrected the defense attorney's misstatements and argued as follows:

> It doesn't matter if Kathy [Sayrath] thought the gun was loaded or not.  It played no role and needs not be shown.
>
> Who cares if she knew it was loaded or not?
>
> The fact is, [Thepsombandith] knew what was going on.  He knew it was a gun; he knew there were bullets in there; he was the one pulling the trigger.  Okay?
>
> Don't be confused; don't be lead astray.  Follow what the law tells you.  All right?
>
> It doesn't matter whether Kathy knew that gun was loaded.
>
> Right after that, the defense concedes if Kathy did know the gun was loaded, and he did what he did, it would have been an assault.  Okay?
>
> That's a concession that he's guilty of count one and because the law will tell you that Kathy did not need to have knowledge.

1  (Id. at 536-37.)  The prosecutor continued, "It doesn't matter
2  whether the gun was loaded or not, you can still assault somebody
3  with it.  Okay?

4     Also, there's no requirement that the gun be loaded for an
5  assault to be carried out.  That's not an element of the assault
6  with a firearm."  (Id. at 537.)

7     Thepsombandith alleges that (1) the prosecutor committed
8  misconduct in closing argument by misstating the law of assault;
9  (2) he was afforded ineffective assistance of counsel because his
10 counsel failed to object to the prosecutor's statement; and (3)
11 the error was prejudicial as to the charge of assault against
12 Gonzales.  (Pet. 6.)  Respondent Almager contends that (1)
13 Petitioner's prosecutorial misconduct claim is procedurally barred
14 by his failure to contemporaneously object at trial; (2) the court
15 of appeal reasonably applied Supreme Court precedent when it
16 determined there was no prosecutorial misconduct; and (3) the
17 court of appeal reasonably rejected Petitioner's claim that his
18 counsel was ineffective.  (Answer Attach. #1 Mem. P. & A. 6-9.)

### 1.   Procedural Default

20    "Just as in those cases in which a state prisoner fails to
21 exhaust state remedies, a habeas petitioner who has failed to meet
22 the State's procedural requirements for presenting his federal
23 claims has deprived the state courts of an opportunity to address
24 those claims in the first instance." Coleman v. Thompson, 501
25 U.S. 722, 731-32 (1991).  A habeas petitioner who has defaulted
26 federal claims in state court by not complying with rules to raise
27 them meets the technical requirements for exhaustion, because
28 there are no longer any state remedies available.  (Id. at 732)

1   (citing 28 U.S.C. § 2254(b)); <u>Engle v. Issac</u>, 456 U.S. 107, 125–

2   26, n.28 (1982)).  But his claim is barred for a distinct reason.

3       A federal court "'will not review a question of federal law

4   decided by a state court if the decision of that court rests on a

5   state law ground that is independent of the federal question and

6   adequate to support the judgment.'"  <u>Calderon v. U.S. Dist. Ct.</u>

7   <u>(Bean)</u>, 96 F.3d 1126, 1129 (9th Cir. 1996) (quoting <u>Coleman</u>, 501

8   U.S. at 729).  "In order to constitute adequate and independent

9   grounds sufficient to support a finding of procedural default, a

10  state rule must be clear, consistently applied, and well-

11  established at the time of the petitioner's purported default."

12  <u>Wells v. Maass</u>, 28 F.3d 1005, 1010 (9th Cir. 1994) (citing <u>Ford v.</u>

13  <u>Georgia</u>, 498 U.S. 411, 424 (1991)).

14      The respondent has the burden of pleading an adequate and

15  independent procedural bar as an affirmative defense in a habeas

16  case.  <u>See</u> <u>Bennett v. Mueller</u>, 322 F.3d 573, 585 (9th Cir. 2003).

17  The burden of proof shifts to the petitioner to place that defense

18  in issue; the burden then shifts back to the respondent to prove

19  the bar is applicable.  <u>See</u> <u>id.</u> at 586.

20      Here, Respondent asserts procedural default as an affirmative

21  defense.  He contends Petitioner waived the prosecutorial

22  misconduct claim when he failed to object at trial.  (Answer

23  Attach. #1 Mem. P. & A. 6.)  Respondent relies on the California

24  Court of Appeal's holding that Petitioner waived his claim of

25  error on appeal when he failed to object to the alleged

26  misconduct.  (<u>Id.</u> at 7; Lodgment No. 13, <u>People v. Thepsombandith</u>,

27  No. D047885, slip op. at 7.)

28

1    A federal habeas court looks to the last reasoned state court

2  opinion to determine whether a petitioner's claim is procedurally

3  barred.  Vansickel v. White, 166 F.3d 953, 957 (9th Cir. 1999)

4  (citing  Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)).  The

5  California Supreme Court was presented with Thepsombandith's

6  prosecutorial misconduct claim.  (See Lodgment No. 14, Petition

7  for Review 3, People v. Thepsombandith, No. S149522.)  But because

8  the denial of the petition for review was based on People v. Black

9  (Black II), 41 Cal. 4th 799, 161 P.3d 1130, 62 Cal. Rptr. 3d 569

10  (2007), which does not address prosecutorial misconduct, the

11  federal habeas court must "look through" to the last reasoned

12  decision of the California Court of Appeal.  See Ylst, 501 U.S. at

13  803; (Lodgment No. 16, Opinion Dismissing Review 2, People v.

14  Thepsombandith, No. S149522).

15    The court of appeal invoked the state procedural bar rule

16  requiring claims of prosecutorial misconduct to be raised at trial

17  to preserve them for appeal.  (Lodgment No. 13, People v.

18  Thepsombandith, No. D047885, slip op. at 6).  The Court presumes

19  "[w]here there has been one reasoned state judgment rejecting a

20  federal claim, later unexplained orders upholding that judgment or

21  rejecting the same claim rest upon the same ground."  Ylst, 501

22  U.S. at 803.  Thepsombandith's prosecutorial misconduct claim is

23  procedurally defaulted if the contemporaneous objection rule is

24  both adequate and independent.

25                    **a.   Adequacy**

26    A state procedural rule is adequate when the rule is "firmly

27  established and regularly followed" at the time of the alleged

28  default.  Anderson v. Calderon, 232 F.3d 1053, 1077 (9th Cir.

1   2000) (citations and quotations omitted) <u>overruled</u> <u>on</u> <u>other</u>

2   <u>grounds</u> <u>by</u> <u>Bittaker v. Woodford</u>, 331 F.3d 715, 728 (9th Cir.

3   2003); <u>see also</u> <u>Bennett v. Mueller</u>, 322 F.3d 573, 583 (9th Cir.

4   2003) (citing <u>Poland v. Stewart</u>, 169 F.3d 573, 577 (9th Cir.

5   1999)); <u>Wells v. Maass</u>, 28 F.3d 1005, 1010 (9th Cir. 1994)

6   (citations omitted) (stating that rule must be clear and

7   consistently applied at the time of petitioner's default).

8        The Ninth Circuit has found the contemporaneous objection

9   rule to be an adequate procedural bar.  <u>See</u> <u>Rich v. Calderon</u>, 187

10  F.3d 1064, 1070 (9th Cir. 1999).  In California, the rule

11  requiring timely objection at trial on specific constitutional

12  grounds is clear, settled, and consistently applied.  <u>See</u>

13  <u>Vansickel</u>, 166 F.3d at 957 (stating "where a defendant fails to

14  timely object, his conviction will not be reversed unless he

15  demonstrates prejudice[]").

16                    **b.   Independence**

17       A state procedural rule is independent when the "state law

18  basis for the decision [is] not . . . interwoven with federal

19  law."  <u>La Crosse v. Kernan</u>, 244 F.3d 702, 704 (9th Cir. 2001)

20  (citing <u>Michigan v. Long</u>, 463 U.S. 1032, 1040-41 (1983); <u>see</u>

21  <u>Harris v. Reed</u>, 489 U.S. 255, 265 (1989)).  A state law basis is

22  interwoven with federal law when "'the state has made application

23  of the procedural bar depend on an antecedent ruling on federal

24  law [such as] the determination of whether federal constitutional

25  error has been committed.'"  <u>Park v. California</u>, 202 F.3d 1146,

26  1152 (9th Cir. 2000) (quoting <u>Ake v. Oklahoma</u>, 470 U.S. 68, 75

27  (1985)).

28

The Ninth Circuit has found that the California contemporaneous objection rule is independent of federal law.  <u>See</u> <u>Vansickel</u>, 166 F.3d at 957 (holding that "by failing to object, [defendant] procedurally defaulted on the federal constitutional claim [defendant] raises in this habeas proceeding[]"). Thepsombandith's trial counsel failed to object on any ground when the prosecutor stated that the gun need not be loaded for Thepsombandith to be convicted of assault with a firearm. (Lodgment No. 7, Rep.'s Tr., vol. 5, 537.)  The court of appeal reiterated that a claim of prosecutorial misconduct is waived when a defendant does not raise it in the trial court.  (Lodgment No. 13, <u>People v. Thepsombandith</u>, No. D047885, slip op. at 6.)

Although the California Court of Appeal also addressed the merits of Petitioner's prosecutorial misconduct claim, that does not prevent the application of an adequate and independent state bar.  <u>Harris v. Reed</u>, 489 U.S. at 264 n.10; (Lodgment No. 13, <u>People v. Thepsombandith</u>, No. D047885, slip op. at 7-9.)  A state court may reach the merits of a federal claim in an alternative holding so long it explicitly invokes a state procedural bar rule as a separate basis for its decision.  <u>Harris</u>, 489 U.S. at 264 n.10.

Petitioner is procedurally barred from raising his claim that the prosecutor committed misconduct because the contemporaneous objection rule is an adequate and independent state doctrine.

### c.   Cause and Prejudice

Review of Petitioner's prosecutorial misconduct claim is precluded unless he "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal

law, or demonstrate that failure to consider the claim[] will result in a fundamental miscarriage of justice." <u>Coleman v. Thompson</u>, 501 U.S. at 749-50 (citing <u>Murray v. Carrier</u>, 477 U.S. 478, 485 (1986)); <u>see also</u> <u>High v. Ignacio</u>, 408 F.3d 585, 590 (9th Cir. 2005) (citing <u>Coleman</u>, 501 U.S. at 750; <u>Franklin v. Johnson</u>, 290 F.3d 1223, 1230-31 (9th Cir. 2002)).  Likewise, a habeas petitioner who has failed to comply with a state's contemporaneous objection rule at trial must show cause and prejudice to obtain habeas relief under federal law.  <u>Murray</u>, 477 U.S. at 485 (citing <u>Wainwright v. Sykes</u>, 433 U.S. 72, 87 (1977)).

Petitioner contends that his claim is not waived because he can establish cause and prejudice for any default.  (Traverse 4, 8.)  Thepsombandith argues that ineffective assistance of trial counsel caused the default.  (<u>Id.</u> at 4.)  Specifically, he asserts that counsel's failure to contemporaneously object to the prosecutor's improper argument establishes cause for the default. (<u>Id.</u>)

A petitioner establishes cause when he or she shows some objective factor, external to the defense, that impeded counsel's efforts to comply with the procedural rule.  <u>Murray</u>, 477 U.S. at 488; <u>see also</u> <u>McCleskey v. Zant</u>, 499 U.S. 467, 493 (1991) (discussing cause under abuse of writ doctrine).  Constitutionally ineffective assistance of counsel is an objective factor that establishes cause.  <u>McCleskey</u>, 499 U.S. at 493-94.  "Attorney error short of ineffective assistance of counsel, however, does not constitute cause and will not excuse a procedural default." <u>Id.</u> at 494.

To establish ineffective assistance, the inquiry is whether counsel's performance fell below an objective standard of reasonableness. Strickland v. Washington, 466 U.S. 668, 687–88 (1984). First, the petitioner must show that the attorney's performance was deficient. Id. at 687. Second, "the [petitioner] must show that the deficient performance prejudiced the defense." (Id.) In other words, "[t]here is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. For Petitioner to prevail on his ineffective assistance of counsel claim, he must satisfy both prongs of the Strickland test. Id. at 687.

The Court's review of counsel's performance is highly deferential, and there is a strong presumption counsel rendered adequate assistance and exercised reasonable professional judgment. United States v. Ferreira-Alameda, 815 F.2d 1251, 1253 (9th Cir. 1987) (citations omitted); Butcher v. Marquez, 758 F.2d 373, 376 (9th Cir. 1985) (citing Strickland, 466 U.S. at 690). Petitioner does not overcome the presumption of competency. See Strickland, 466 U.S. at 689; Morris v. California, 966 F.2d 448, 456 (9th Cir. 1991), cert. denied, 506 U.S. 831 (1992).

The state court of appeal concluded that the prosecutor was talking about count one, not count two, when he said, "Also, there's no requirement that the gun be loaded for an assault to be carried out." (Lodgment No. 7, Rep.'s Tr., vol. 5, 537; Lodgment No. 13, People v. Thepsombandith, No. D047885, slip op. at 8.) The record indicates that the prosecutor was clarifying the law

regarding the assault of Sayrath alleged in count one, and he
continued discussing the assault on her.  (Lodgment No. 7, Rep.'s
Tr., vol. 5, 537.)   The federal court "need not determine the
actual explanation for trial counsel's failure to object, so long
as his failure to do so falls within the range of reasonable
representation."  Morris, 966 F.2d at 456-57 (citation omitted).

Trial counsel's failure to object did not fall below an
objective standard of reasonableness.  See id. at 456 (stating
that an effective advocate could have reasonably decided not to
object).   The prosecutor made several references to "Kathy," the
victim in count one, directly before and after the complained of
statement.  (Lodgment No. 7, Rep.'s Tr., vol. 5, 536.)   The court
of appeal found that the record was clear that the prosecutor's
argument was directed to the assault alleged in count one.
(Lodgment No. 13, People v. Thepsombandith, No. D047885, slip op.
at 8.)   This conclusion is a reasonable determination of the
facts.

The state appellate court also found that even if the jury
construed the prosecutor's argument as applying to count two, as
Petitioner asserts, the result was not prejudicial.   The
fundamental miscarriage of justice exception to a procedural
default is applied in extraordinary cases when a constitutional
violation results in the conviction of an innocent person.   Schlup
v. Delo, 513 U.S. 298, 327 (1995) (citing Murray v. Carrier, 477
U.S. at 496).   Thepsombandith "cannot establish prejudice because
there is no reasonable probability that but for counsel's error,
the result of the trial would have been different."  Vansickel,

1   166 F.3d at 958 (citing <u>White v. Lewis</u>, 874 F.2d 599, 604 (9th

2   Cir. 1989)); <u>see</u> <u>Strickland</u>, 466 U.S. at 694.

3        In his Traverse, Petitioner acknowledges that "the

4   prosecutor's statement was specifically directed at count

5   one . . . ." (Traverse 5.)  Nonetheless, Petitioner asserts "the

6   argument could erroneously be applied to count two." (<u>Id.</u> at 9.)

7   It is not reasonably probable that the jury convicted

8   Thepsombandith of count two, assaulting Gonzalez with a firearm,

9   if the jurors believed the gun was not loaded.

10       Additionally, the evidence indicates that the gun was loaded

11  when he pointed it at Gonzales.  Merely seconds after Gonzales

12  heard what she thought was a gunshot, she ran into the shack and

13  saw Petitioner pointing a black object she thought was a gun at

14  Sayrath; he then pointed it at her.  (Lodgment No. 6, Rep.'s Tr.,

15  vol. 4, 350-52.)  Gonzales testified that she heard Thepsombandith

16  cock the gun; it sounded "[l]ike putting the bullet in the

17  chamber." (<u>Id.</u> at 351.)  Thepsombandith said, "Are you going to

18  be a fucking hero?" (Lodgment No. 5, Rep.'s Tr., vol. 3, 90-91.)

19  The evidence was sufficient for the jury to believe the gun was

20  loaded and find Petitioner committed an assault upon Sherry

21  Gonzalez.

22       Petitioner cannot establish his counsel's deficient

23  performance rendered the result of the trial unreliable.  <u>See</u>

24  <u>Fretwell v. Lockhart</u>, 506 U.S. 364, 372 (1993) (citing <u>Strickland</u>,

25  466 U.S. at 687).  Nor can he demonstrate a reasonable probability

26  that he would have prevailed if his attorney had timely objected

27  to the prosecution's statement.  <u>See</u> <u>Strickland</u>, 466 U.S. at 687.

28  Therefore, Thepsombandith cannot establish cause and prejudice to

1  excuse the procedural default of his prosecutorial misconduct

2  claim by asserting ineffective assistance of counsel.

3                **2.   Whether Misconduct Occurred**

4       Even if Petitioner's prosecutorial misconduct claim is not

5  procedurally barred, there was no misconduct.  Petitioner asserts

6  the prosecutor committed misconduct infecting count two by telling

7  the jury the gun did not have to be loaded to commit assault.[1]

8  (Traverse 5.)  He claims the statement, although directed at count

9  one, was general enough for the jury to believe it applied to both

10 counts of assault.  (<u>Id.</u>)  Respondent argues, and the court of

11 appeal concluded, that the statement was legally correct as to

12 count one, and the argument was harmless as to count two.  (Answer

13 Attach. #1 Mem. P. & A. 8; Lodgment No. 13, <u>People v.</u>

14 <u>Thepsombandith</u>, No. D047885, slip op. at 8-9.)

15      Petitioner must satisfy a two-part test to obtain federal

16 habeas relief.  First, he must show the prosecutor's comment was

17 improper.  <u>Tak Sun Tan v. Runnels</u>, 413 F.3d 1101, 1112 (9th Cir.

18 2005); <u>see</u> <u>Darden v. Wainwright</u>, 477 U.S. 168, 180-81 (1986).

19 Second, he must show the comment "so infected the trial with

20 unfairness as to make the resulting conviction a denial of due

21 process."  <u>Darden</u>, 477 U.S. at 181 (quoting <u>Donnelly v.</u>

22

---

23      [1] Thepsombandith maintains the prosecutor's theory on count
   one was based on Thepsombandith pressing the gun barrel to
24 Sayrath's head. (Lodgment No. 7, Rep.'s Tr., vol. 5, 498-99;
   Traverse 5.)  Whereas, he argues count two was based on the
25 Petitioner pointing the gun at Gonzalez.  (Lodgment No. 7, Rep.'s
   Tr., vol. 5, 499; Traverse 5.)  "The latter theory <u>did</u> require
26 proof Petitioner had the 'present ability' to apply force to
   Gonzalez, i.e., that the gun was loaded.  (Traverse 5) (citing
27 <u>People v. Rodriguez</u>, 20 Cal. 4th 1, 10 n.3, 971 P.2d 618, 623 n.3,
   82 Cal. Rptr. 2d 413, 418 n.3 (1999); <u>People v. Fain</u>, 34 Cal. 3d
28 350, 357 n.6, 667 P.2d 694, 698 n.6, 193 Cal. Rptr. 890, 894 n.6
   (1983).

1  DeChristoforo, 416 U.S. 637 (1974)); accord Greer v. Miller, 483

2  U.S. 756, 765 (1987); Thompson v. Borg, 74 F.3d 1571, 1576 (9th

3  Cir. 1996); Tak Sun Tan, 413 F.3d at 1112).

4  **a.    Improper Comments**

5      Habeas corpus relief may be granted if the adjudication of

6  the claim "resulted in a decision that was contrary to, or

7  involved an unreasonable application of, clearly established

8  Federal law, as determined by the Supreme Court of the United

9  States . . . ."  28 U.S.C. § 2254(d)(1).  "The prosecutor's

10 comments must be evaluated in light of the defense argument that

11 preceded it . . . ."  Darden, 477 U.S. at 182.

12     In his closing argument, defense counsel misstated the law on

13 assault when he emphasized that Sayrath did not know the gun was

14 loaded until after Thepsombandith fired it.  (Lodgment No. 7,

15 Rep.'s Tr., vol. 5, 522; see Lodgment No. 13, People v.

16 Thepsombandith, No. D047885, slip op. at 5.)  In response, the

17 prosecutor correctly explained that Sayrath's knowledge was not an

18 element of assault stating, "[Knowledge] played no role and need[]

19 not be shown."  (Lodgment No. 13, People v. Thepsombandith, No.

20 D047885, slip op. at 6.)  The prosecutor's following statement --

21 that the gun does not have to be loaded to commit assault -- was

22 not improper as applied to count one.  (Id. at 8.)

23     "Counsel are given latitude in the presentation of their

24 closing arguments . . . ."  Ceja v. Stewart, 97 F.3d 1246, 1253-54

25 (9th Cir. 1996) (quoting United States v. Baker, 10 F.3d 1374,

26 1415 (9th Cir. 1993), cert. denied, 513 U.S. 934 (1994)).  "It is

27 helpful as an initial matter to place these remarks in context."

28 Darden, 477 U.S. at 179.  In Darden, the prosecutors made several

1  improper statements in closing argument.  For instance, the

2  prosecution recommended the death penalty for the defendant,

3  stating, "'That's the only way I know that he is not going to get

4  out on the public.'"  Id. at 180 n.10.  Then, the prosecutor

5  stated, "'As far as I am concerned, . . . [Defendant is] an animal

6  . . . ."  Id. at n.11.  "'I wish [the decedent] had had a shotgun

7  in his hand . . . and blown [Defendant's] face off.  I wish that I

8  could see him sitting here with no face, blown away by a

9  shotgun.'"  Id. at n.12.  The Court held that the comments

10 "undoubtedly were improper."  Id. at 180.  Ultimately, however,

11 the Court determined the defendant was not deprived of a fair

12 trial.  Id. at 181.

13     The prosecutor's argument must be viewed in context.  The

14 comment came at the end of the trial.  (See Lodgment No. 7, Rep.'s

15 Tr., vol. 5, 488–89.)  The statement was made in response to

16 defense counsel's closing argument, which misstated the law of

17 assault by emphasizing that the victim must have known the gun was

18 loaded before Thepsombandith fired it.  (Id. at 522.)  Like the

19 argument in Darden, the prosecutor's argument here "was invited by

20 or was responsive to the opening summation of the defense."

21 Darden, 477 U.S. at 182.  "The idea of 'invited response' is used

22 not to excuse improper comments, but to determine their effect on

23 the trial as a whole."  Id.  "[T]he challenged statement was one

24 comment by the prosecutor in his closing argument that consisted

25 of 36 pages of transcript."  (Lodgment No. 13, People v.

26 Thepsombandith, No. D047885, slip op. at 9.)

27     The prosecution's isolated statement that "there's no

28 requirement that the gun be loaded for an assault to be carried

22

out[]" against Sayrath, is distinguished from the improper

statements made in <u>Darden</u>.   (Lodgment No. 7, Rep.'s Tr., vol. 5,

537); <u>see Darden</u>, 477 U.S. at 180.   The appellate court's decision

that the prosecutor's statements were not improper is neither

contrary to, nor an unreasonable application of, clearly

established law.

Habeas corpus may also be granted if the adjudication of the

claim "resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in

the State court proceeding."   28 U.S.C. § 2254(d)(2).   Although

the court of appeal held Petitioner waived the prosecutorial

misconduct claim, it nonetheless considered the claim on the

merits and determined reversal was not required.   (Lodgment No.

13, <u>People v. Thepsombandith</u>, No. D047885, slip op. at 7.)

The factual basis for the court of appeal's conclusion is as

follows:

> In closing argument defense counsel raised the fact
> that Sayrath was not aware the gun was loaded until
> after Thepsombandith fired it, misstating the law on
> assault:  "The knowledge of the deadly capacity, such as
> it were of this firearm, was only known after the
> discharge.  [¶] It never again was pointed at her.  She
> never stated that the firearm was pointed at her again.
> [¶] I dare say that if the firearm had been pointed at
> her a second time, we'd have an assault on [Sayrath] by
> means of a firearm."
>
> On rebuttal, in response to this argument by
> defense counsel, the prosecutor stated, "Now, here's one
> you've got to be real careful with.  [Sayrath] didn't
> know the gun was loaded, so it can't be assault.  Did
> you hear that?"  The prosecutor went on to explain,
> correctly, that Sayrath's knowledge was not an element
> of the charge of assault:  "The person committing the
> act -- that's him -- the person committing the act was
> aware of facts that would lead a reasonable person to
> realize that a direct, natural, and probable result of
> this act, that physical force would be applied to
> another person.  [¶] It doesn't matter if [Sayrath]

thought the gun was loaded or not. It played no role and needs not be shown.  [¶] . . . [¶] The fact is, he knew what was going on. He knew it was a gun; he knew there were bullets in there; he was the one pulling the trigger."

In further discussing count 1 assault against Sayrath, however, the prosecutor then made the following statements:  "*It doesn't matter whether the gun was loaded or not,* you can still assault somebody with it. Okay?  [¶] Also, *there's no requirement that the gun be loaded for an assault to be carried out.  That's not an element of the assault with a firearm."* (Italics added.)

(<u>Id.</u> at 5-6.)

Defense counsel misstated the law of assault in closing argument:  "[Sayrath] testified she didn't even know [the gun] was loaded at the point in time that it was up against her head." (Lodgment No. 7, Rep.'s Tr., vol. 5, 522.)  The prosecutor subsequently clarified to the jury that knowledge is not an element of assault.  He made these statements in response to the preceding defense argument.  (<u>Id.</u> at 535-36); see <u>Darden</u>, 477 U.S. at 179.

Moreover, the prosecutor referenced Sayrath ("Kathy")—the victim in count one—directly before and after stating that "there's no requirement that the gun be loaded."  (Lodgment No. 7, Rep.'s Tr., vol. 5, 536.)  It is unlikely that the jury applied the statement to Gonzales (the victim in count two).  The argument immediately preceding and following the statement at issue are in the context of discussing "Kathy Sayrath."  (<u>Id.</u> at 536-37.)  The prosecutor did not mention "Sherry Gonzales" until later by stating, "When Sherry came in, she described how [Sayrath] looked."  (<u>Id.</u> at 537.)

In the context of the trial, the state court reasonably determined the facts in the record when it held that the

1  prosecution's statement was limited to count one, which was a

2  correct statement of law.  (Lodgment No. 13, <u>People v.</u>

3  <u>Thepsombandith</u>, No. D047885, slip op. at 8-9; <u>see also</u> 28 U.S.C. §

4  2254(d)(2).)

5                          **b.   Harmless Error**

6       When considering a claim of prosecutorial misconduct, the

7  court must also determine whether the error requires reversal or

8  was harmless.  <u>Thompson v. Borg</u>, 74 F.3d 1571, 1577 (9th Cir.

9  1996); <u>United States v. Kallin</u>, 50 F.3d 689, 693 (9th Cir. 1995)

10 (citing <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 629 (1993));  <u>see also</u>

11 <u>Greer v. Miller</u>, 483 U.S. 756, 765 (1987) (prosecutorial

12 misconduct is subject to harmless error review).

13      The issue is whether the prosecutor's comments rendered

14 Thepsombandith's trial so unfair that his conviction was a denial

15 of due process.  <u>Darden</u>, 477 U.S. at 181 (quoting <u>Donnelly v.</u>

16 <u>DeChristoforo</u>, 416 U.S. 637, 643 (1974).)  The misconduct is

17 reviewed in the context of the entire trial.  <u>See, e.g.</u>, <u>Greer</u>,

18 483 U.S. at 766 (holding that a single question, an immediate

19 objection, and two curative instructions "clearly" demonstrate the

20 prosecutor's improper question did not violate due process);

21 <u>Donnelly</u>, 416 U.S. at 639.  Even if the prosecutor's statements

22 could be considered improper, they were not prejudicial.

23      Petitioner asserts there is a reasonable probability the jury

24 would have found the "present ability" element of assault had not

25 been proved beyond a reasonable doubt without the prosecutor's

26 misstatement.  (Traverse 7.)  He argues the evidence was equivocal

27 as to whether the gun was loaded, and taking that question away

28 from the jury infected the verdict as to count two.  (<u>Id.</u>)

1   Petitioner claims the prosecutor's comment had a "substantial and
2   injurious effect" on the verdict.  (Traverse 8 (citation
3   omitted).)  But the prosecutor's statements were not "of
4   sufficient significance to result in the denial of the defendant's
5   right to a fair trial." Greer, 483 U.S. at 765 (quoting United
6   States v. Bagley, 473 U.S. 667, 676 (1985)); Darden, 477 U.S. at
7   180-81 (holding that even though the prosecutor's statements were
8   "undoubtedly improper," they still did not deny Petitioner of a
9   fair trial).

10       Even if the prosecutor's comment that "there's no requirement
11   that the gun be loaded" could have been construed by the jury to
12   apply to the second count of assault, the evidence clearly
13   suggested that the gun was loaded when Thepsombandith pointed it
14   at Gonzales.  Thepsombandith held a gun to Sayrath's head; then he
15   fired a shot into the air, and Sayrath screamed.  (Lodgment No. 5,
16   Rep.'s Tr., vol. 3, 90, 189, 210.)  Gonzales ran to the shack and
17   opened the door to ensure Sayrath was safe.  (Id.)  Gonzales saw
18   Thepsombandith holding the gun and watched as he "cocked" it.
19   (Lodgment No. 6, Rep.'s Tr., vol. 4, 351-52, 428-29.)  It is not
20   reasonably probable that the jury convicted Thepsombandith of
21   assaulting Gonzalez with a firearm while believing the gun was
22   unloaded when he pointed it at her.  The weight of the evidence
23   against Thepsombandith is heavy, which "reduced the likelihood
24   that the jury's decision was influenced by argument." Darden, 477
25   U.S. at 182.  Thus, the prosecutor's statement did not prejudice
26   Petitioner.  Id. at 181.

27       Accordingly, the prosecutor's comments did not deny
28   Thepsombandith a fair trial.  The state court reasonably concluded

1   "[i]t was not a pattern of misconduct. . . ."  (Lodgment No. 13,

2   *People v. Thepsombandith*, No. D047885, slip op. at 9 (citation

3   omitted).)  The court of appeal correctly held there was no

4   resulting prejudice.  (*Id.*)  The state court decision was neither

5   contrary to, nor an unreasonable application of, clearly

6   established United States Supreme Court law.  28 U.S.C. §

7   2254(d)(1).  Moreover, the state court's decision was based on a

8   reasonable determination of the facts in light of the evidence

9   presented.  *See* 28 U.S.C. § 2254(d)(2).

10      For all these reasons, ground one in Thepsombandith's

11  Petition does not entitle him to relief.

12      **B.   Ineffective Assistance of Trial Counsel - Claim Two**

13      As part of ground one, Thepsombandith argues that his trial

14  counsel was ineffective for failing to object to the prosecutor's

15  closing argument.  (Pet. 6.)  Respondent urges that the California

16  Court of Appeal decision denying this argument on its merits was a

17  reasonable application of Supreme Court precedent.  (Answer

18  Attach. #1 Mem. P. & A. 6.)

19      The last state court to address the merits of Petitioner's

20  ineffective assistance of counsel claim was the California Court

21  of Appeal.  (*See* Lodgment No. 13, *People v. Thepsombandith*, No.

22  D047885, slip op. at 9-11.)  This Court reviews that decision.

23  *Ylst v. Nunnemaker*, 501 U.S. at 806.

24      The state appellate court described the burden Thepsombandith

25  must satisfy to establish that his trial counsel was ineffective.

26  "A defendant claiming ineffective assistance of counsel has the

27  burden to show:  (1) counsel's performance was deficient, falling

28  below an objective standard of reasonableness under prevailing

27

professional norms; and (2) the deficient performance resulted in prejudice." (Lodgment No. 13, <u>People v. Thepsombandith</u>, No. D047885, slip op. at 10.) Trial counsel is presumed to be competent. <u>Strickland</u>, 466 U.S. at 689. "To rebut this presumption, [Petitioner] must demonstrate that his counsel's performance was unreasonable under prevailing professional norms and was not the product of sound strategy." <u>Sechrest v. Ignacio</u>, 549 F. 3d 789, 815 (9th Cir. 2008). Counsel's representation is deficient if "it falls outside the range of competence demanded of attorneys in criminal cases." <u>Id.</u>

Still, the state court rejected Petitioner's ineffective assistance claim, concluding that the prosecutor's closing comment was not improper. As explained above, the California Court of Appeal held that prosecutor's statement was not misconduct. The court concluded that "[d]efense counsel could reasonably have believed that the jury would only understand the statements as applying to count 1, and, therefore, the failure to object did not fall below an objective standard of reasonableness." (Lodgment No. 13, <u>People v. Thepsombandith</u>, No. D047885, slip op. at 11.) Federal courts have held that the failure to make a meritless objection is not deficient performance and cannot constitute ineffective assistance. <u>Jones v. Smith</u>, 231 F.3d 1227, 1239 n.8 (9th Cir. 2000) (citing <u>Boag v. Raines</u>, 769 F.2d 1341, 1344 (9th Cir 1985); <u>accord</u> <u>Green v. Johnson</u>, 160 F.3d 1029, 1037 (5th Cir. 1998).

Furthermore, as discussed above, Petitioner cannot establish that he suffered any prejudice because of the prosecutor's comment. The state court concluded that "the evidence was

1  overwhelming that the gun <u>was</u> loaded when Thepsombandith pointed

2  it at Gonzales.   Therefore, it is not reasonably probable that

3  [he] would have received a more favorable result but for counsel's

4  failure to object to the prosecutor's statement." (<u>Id.</u> (citing

5  <u>Strickland</u>, 466 U.S. at 693-94).)   Because Petitioner cannot show

6  that the prosecutor's argument constituted prejudicial misconduct,

7  he cannot show that he was prejudiced by counsel's failure to

8  object.

9      The state court concluded that Thepsombandith did not

10 establish that his trial counsel's representation was below an

11 objective standard of reasonableness or that the result of his

12 trial would have been different if counsel had objected to the

13 prosecutor's closing argument.   (Lodgment No. 13, <u>People v.</u>

14 <u>Thepsombandith</u>, No. D047885, slip op. at 9-11.)   This decision was

15 neither contrary to, nor an unreasonable application of, clearly

16 established Supreme Court law.   <u>See</u> 28 U.S.C. § 2254(d)(1).   Nor

17 was the decision based upon an unreasonable determination of the

18 facts.   <u>See</u> 28 U.S.C. § 2254(d)(2).   Accordingly, he is not

19 entitled to habeas relief on this claim.

20      **C.   Due Process Violation at Sentencing - Claim Three**

21      Thepsombandith argues that the imposition of the ten-year

22 upper term for the gun enhancement violated his right to due

23 process.   (Pet. 7.)   Petitioner was sentenced pursuant to

24 California's determinate sentencing law ("DSL"), which directs how

25 judges sentence defendants for certain offenses.   California's

26 sentencing scheme proscribes three possible terms of imprisonment:

27 a lower, middle, and upper term.   <u>See, e.g.</u>, Cal. Penal Code §

28

12022.5(a) (West 2000) (setting additional and consecutive imprisonment terms of three, four, or ten years).

On January 17, 2006, the trial judge sentenced Thepsombandith to twenty-four years imprisonment. (Lodgment No. 2, Clerk's Tr., vol. 2, 319.) As to the first count of assault with a firearm (Kathy Sayrath), the court imposed a six-year term and a ten-year enhancement. (Lodgment No. 2, Clerk's Tr., vol. 2, 278.) For the second count of assault with a firearm (Sherry Gonzalez), the court imposed a two-year term and a sixteen-month enhancement. (Id.) The court imposed an eight-month term for discharging a firearm in a grossly negligent manner (count three) and a one-year enhancement. (Id.) Petitioner was sentenced to one-year imprisonment for assault with serious bodily injury (count six). (Id.) The court also imposed one-year enhancements for each of Petitioner's two prison priors under Cal. Penal Code § 667.5(b). (Id.; see Cal. Penal Code § 667.5(b) (West Supp. 2009).) The court stayed the sentence on being a felon in possession of a firearm and being a felon in possession of ammunition (counts four and five). (Lodgment No. 2, Clerk's Tr., vol. 2, 278, 319.)

At the time of sentencing, the judge stated his reasons for imposing the ten-year upper term for the gun enhancement.

> As to count one, I'll be imposing the mid term of six years. [¶] On the 12022.5(A) allegation, I am going to impose the upper term of ten years.
>
> Now, I think this is significant. [¶] I have definite concerns about this defendant. [¶] This is his fourth time of having a gun in his possession. There were three other times. [¶] Everything that we did to convince him those three other times that you're not to have a gun, obviously, didn't have an impact, and he knew it. [¶] The gun is what makes this so dangerous. [¶] I do think he has a lack of control, and he is

1  
2
>dangerous because of that.  [¶] So, I think there is a
legal basis for that.

3  
4  
5
>    I didn't use the priors on the actual 245(B) count
one core offense.  [¶] So, it's not a double use.  I'm
using only the 12022.5 allegation.  [¶] Not that that
would prohibit the court from doing it, but I have
chosen to approach it this way.  [¶] The fourth time.
You can't have the gun, period.

6  (Lodgment No. 7, Rep.'s Tr., vol. 5, 596-97.)

7      On direct appeal, Thepsombandith argued the ten-year upper

8  term violated his right to due process under <u>Blakely v.</u>

9  <u>Washington</u>, 542 U.S. 296 (2004).  (Lodgment No. 9, Appellant's

10  Supplemental Opening Br. 1-2, <u>People v. Thepsombandith</u>, No.

11  D047785.)  The court of appeal rejected his contention that the

12  trial court impermissibly imposed the upper term on the firearm

13  enhancement "based upon facts beyond those found by the jury."

14  (Lodgment No. 13, <u>People v. Thepsombandith</u>, No. D047885, slip op.

15  at 12.)  The California Supreme Court had rejected a similar claim

16  in <u>People v. Black</u>, 35 Cal. 4th 1238, 1244, 113 P.3d 534, 536, 29

17  Cal. Rptr. 3d 740, 742 (2005), <u>vacated</u>, 549 U.S. 1190 (2007).

18  Initially, the California Supreme Court granted Thepsombandith's

19  petition for review; the court later dismissed it after deciding

20  <u>People v. Black (Black II)</u>, 41 Cal. 4th 799, 161 P.3d 1130, 62

21  Cal. Rptr. 3d 569 (2007).  (Lodgment No. 15, <u>People v.</u>

22  <u>Thepsombandith</u>, No. S149522, order 1); Lodgment No. 16, <u>People v.</u>

23  <u>Thepsombandith</u>, No. S149522, order 2.)

24                **1.   Retroactivity**

25      Federal habeas courts may not grant relief based on a rule

26  announced after a petitioner's conviction and sentence became

27  final.  <u>Caspari v. Bohlen</u>, 510 U.S. 383, 389 (1994) (citing

28  <u>Stringer v. Black</u>, 503 U.S. 222, 227 (1992).)  "A state prisoner

whose conviction is final may not automatically have the rule from a subsequently decided case applied in a petition for habeas corpus pursuant to § 2254." <u>Schardt v. Payne</u>, 414 F.3d 1025, 1033 (9th Cir. 2005) (citing <u>Teague v. Lane</u>, 489 U.S. at 310).

<u>Teague</u> lays out a three-part test for determining when a decision of the Supreme Court setting forth a new procedural rule will apply retroactively on collateral review:

> First, the court must determine when the defendant's conviction became final.  Second, it must ascertain the legal landscape as it then existed and ask whether the Constitution, as interpreted by the precedent then existing, compels the rule.  That is, the court must decide whether the rule is actually "new."  Finally, if the rule is new, the court must consider whether it falls within either of the two exceptions to nonretroactivity.

<u>Beard v. Banks</u>, 542 U.S. 406, 411 (2004) (internal citations and quotation marks omitted).  The two exceptions are well known:  (1) rules forbidding punishment for certain conduct or for defendants of a particular status and (2) "watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." <u>Schardt</u>, 414 F.3d at 1033-34 (quoting <u>Beard</u>, 542 U.S. at 416-17).

This Court must determine whether <u>Cunningham v. California</u>, 549 U.S. 270 (2007), applies retroactively under the <u>Teague</u> framework. <u>Beard</u>, 542 U.S. at 412 (holding that habeas courts must analyze <u>Teague</u>'s nonretroactivity principle prior to considering the merits whenever a retroactivity issue is raised). Petitioner's case was pending on direct review when <u>Cunningham</u> was decided in 2007.  (Lodgment No. 15, <u>People v. Thepsombandith</u>, No. S149522, order 1.)  Accordingly, the Court must move to the second step and decide whether <u>Cunningham</u> announced a "new rule" under

1  <u>Teague</u>.  The Supreme Court has outlined the analysis required to

2  determine when a "new rule" has been established.

3          In general, . . . a case announces a new rule when
         it breaks new ground or imposes a new obligation on the
4        States or the Federal Government. . . .  To put it
         differently, a case announces a new rule if the result
5        was not <u>dictated</u> by precedent existing at the time the
         defendant's conviction became final.

6

7  <u>Teague</u>, 489 U.S. at 301 (citations omitted) (emphasis added).

8      In a series of cases, the Supreme Court has announced the

9  contours of a defendant's right to trial by jury regarding facts

10 affecting the sentence.  <u>See</u> <u>Apprendi v. New Jersey</u>, 530 U.S. 466

11 (2000); <u>Blakely v. Washington</u>, 542 U.S. 296; <u>United States v.</u>

12 <u>Booker</u>, 543 U.S. 220 (2005).

13     In <u>Apprendi</u>, the Supreme Court held, "Other than the fact of

14 a prior conviction, any fact that increases the penalty for a

15 crime beyond the prescribed statutory maximum must be submitted to

16 a jury, and proved beyond a reasonable doubt."  <u>Apprendi</u>, 530 U.S.

17 at 490.  In <u>Blakely</u>, the Court applied <u>Apprendi</u> and invalidated a

18 sentencing scheme that allowed a judge to increase a defendant's

19 sentence beyond the statutory maximum based on judicial

20 factfinding.  <u>Blakely</u>, 542 U.S. at 303.  "[T]he 'statutory

21 maximum' for <u>Apprendi</u> purposes is the maximum sentence a judge may

22 impose solely on the basis of the facts reflected in the jury

23 verdict or admitted by the defendant."  <u>Id.</u> (citing <u>Ring v.</u>

24 <u>Arizona</u>, 536 U.S. 584, 602 (2002)).  The Ninth Circuit has held

25 that both <u>Apprendi</u> and <u>Blakely</u> announced new rules of

26 constitutional law.  <u>Schardt</u>, 414 F.3d at 1038; <u>Jones v. Smith</u>,

27 231 F.3d 1227, 1236 (9th Cir. 2000).

28

33

In <u>Booker</u>, the Court invalidated Federal Sentencing Guidelines to the extent they allowed the judge to make independent factfindings that placed the defendant in a higher sentencing range. <u>Booker</u>, 543 U.S. at 233.  "For when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant."  <u>Id.</u>  But in <u>People v. Black (Black I)</u>, 35 Cal. 4th 1238, 113 P.3d 534, 29 Cal. Rptr. 3d 740, <u>vacated</u>, 549 U.S. 1190, the California Supreme Court held that California's DSL was not invalidated by <u>Blakely</u>.  <u>Id.</u> at 1244, 113 P.3d at 536, 29 Cal. Rptr. 3d at 742.

In <u>Cunningham</u>, 549 U.S. 270, the Supreme Court held that DSL violated <u>Apprendi</u>'s "bright-line rule" that facts in aggravation must be submitted to a jury and found beyond a reasonable doubt. <u>Id.</u> at 291 (citing <u>Blakely</u>, 542 U.S. at 307-08).  The Court concluded that California's DSL resembled the sentencing systems invalidated in <u>Blakely</u>.  <u>Id.</u> at 294.

At the time Thepsombandith was sentenced, <u>Apprendi</u>, <u>Blakely</u>, and <u>Booker</u> clearly established that sentencing schemes that raise the maximum term based on facts not found by a jury violate a defendant's due process rights.  <u>See</u> <u>Apprendi</u>, 530 U.S. 466; <u>Blakely</u>, 542 U.S. 296; <u>Booker</u>, 543 U.S. 220.

<u>Cunningham</u> applied these precedents when it held that aggravating factors must be submitted to a jury and found beyond a reasonable doubt to preserve a defendant's basic jury-trial right. <u>Cunningham</u>, 549 U.S. at 291 (citing <u>Blakely</u>, 542 U.S. at 307-08). Therefore, the holdings of <u>Apprendi</u>, <u>Blakely</u>, <u>Booker</u>, and <u>Cunningham</u> collectively constitute clearly established federal

law.  This law, however, is not new.  The Ninth Circuit, in _Butler_

1  _v. Curry_, 528 F.3d 624 (9th Cir. 2008), held that _Cunningham_

2  applies retroactively because it did not announce a new rule of

3  constitutional law within the meaning of _Teague_.   _Id._ at 639,

4  _cert. denied_, _Curry v. Butler_, 77 U.S.L.W. 3359 (U.S. Dec. 15,

5  2008) (No. 08-517); _accord_ _Wright v. Dexter_, 546 F.3d 1096, 1097

6  (9th Cir. 2008).  In _Butler_, the Ninth Circuit found that

7  _Apprendi_, _Blakely_ and _Booker_ compelled the result in _Cunningham_.

8  _Id._ at 635.

9

10      "_Apprendi_, _Blakely_, and _Booker_ made 'courts throughout the

11  land' aware that sentencing schemes that raise the maximum

12  possible term based on facts not found by a jury violate the

13  constitutional rights of defendants."  _Id._ at 639 (citing _Teague_,

14  489 U.S. at 306).  The court further held that "[n]o principles of

15  comity or federalism would be served by refusing to apply this

16  rule to functionally indistinguishable state sentencing schemes on

17  collateral review.  _Cunningham_ thus did not announce a new rule of

18  constitutional law and may be applied retroactively on collateral

19  review."  _Id._

20      _Apprendi_ (2000), _Blakely_ (2004) and _Booker_ (2005) were

21  decided before Thepsombandith was convicted.  _See_ _Apprendi_, 530

22  U.S. 466; _Blakely_, 542 U.S. 296; _Booker_, 543 U.S. 220.  _Cunningham_

23  was decided on January 22, 2007, when Thepsombandith's case was

24  pending on direct review in the California Supreme Court.

25  (Lodgment No. 15, _People v. Thepsombandith_, No. S149522, order 1.)

26  _Cunningham_ is retroactive and applies to Petitioner's case.

27  _Butler_, 528 F.3d at 639.

28

1

## 2.   AEDPA

2     Next, the Court must inquire whether the state supreme

3 court's reliance on Black II was contrary to "clearly established

4 federal law."  28 U.S.C. § 2254(d)(1).  To obtain relief under §

5 2254, the state court's decision must be either "contrary to" or

6 an "unreasonable application" of clearly established Supreme Court

7 law.  Williams v. Taylor, 529 U.S. 362, 412-13 (2000).  "A state

8 court decision is contrary to clearly established federal law if

9 the state court either applies a rule that contradicts the

10 governing law set forth by the Supreme Court or arrives at a

11 different result when confronted by a set of facts that are

12 materially indistinguishable from a decision of the Supreme

13 Court."  Sims v. Rowland, 414 F.3d 1148, 1151 (9th Cir. 2005)

14 (citing Williams, 529 U.S. at 405-06); see also Butler, 528 F.3d

15 at 640.  A state court decision is an unreasonable application of

16 federal law when it applies Supreme Court precedent in an

17 objectively unreasonable manner, or unreasonably fails to extend

18 the legal principles of a Supreme Court decision to situations

19 which it should have controlled.  Sims, 414 F.3d at 1152 (citing

20 Brown v. Payton, 544 U.S. 133, 141 (2005); Ramdass v. Angelone,

21 530 U.S. 156, 166 (2000)); see also Butler, 528 F.3d at 640.

22     The court must "look to the last reasoned decision of the

23 state court as the basis of the state court's judgment" when

24 reviewing a state court decision.  Polk v. Sandoval, 503 F.3d 903,

25 909 (9th Cir. 2007) (citing Benson v. Terhune, 304 F.3d 874, 880

26 n.5 (9th Cir. 2002).  Respondent distinguishes this case from

27 Butler.  (Answer Attach. #1 Mem. P. & A. 13.)  The warden argues

28 that in Butler, the only state court determinations on the merits

1   rested on the reasoning of <u>Black I</u>.  (<u>Id.</u>)  In contrast,

2   Respondent argues, the California Supreme Court rejected

3   Thepsombandith's claim in light of <u>Black II</u>.  (<u>Id.</u>; Lodgment No.

4   16, <u>People v. Thepsombandith</u>, No. S149522, order 2 (Cal. Sept. 12,

5   2007) (en banc).))  The California Supreme Court stated:  "In

6   light of <u>People v. Black</u> (2007) 41 Cal.4th 799 [161 P.3d 1130; 62

7   Cal. Rptr. 3d 569] (<u>Black II</u>), review in the above-entitled

8   matters is dismissed."  (Lodgment No. 16, <u>People v.</u>

9   <u>Thepsombandith</u>, No. S149522, order 2.)

10      The California Supreme Court denied Thepsombandith's petition

11   for review with a one-sentence explanation.  Consequently, this

12   Court must determine whether that provides a sufficient basis for

13   review or whether it should look to the California Court of

14   Appeal's opinion.  (<u>Compare id.</u>), <u>with</u> <u>Ylst v. Nunnemaker</u>, 501

15   U.S. at 803 (holding that where there has been one reasoned state

16   judgment rejecting a federal claim, it is presumed that later

17   unexplained orders upholding that judgment or rejecting the claim

18   rest upon the same ground).)  In <u>Ylst</u>, the Court explained, "The

19   consequent question presented . . . is how federal courts in

20   habeas proceedings are to determine whether an unexplained order

21   (by which we mean an order whose text or accompanying opinion does

22   not disclose the reason for the judgment) rests primarily on

23   federal law."  <u>Id.</u> at 802.

24      The state supreme court relied on the reasoning in <u>Black II</u>

25   when it dismissed Thepsombandith's petition.  (Lodgment No. 16,

26   <u>People v. Thepsombandith</u>, No. S149522, order 2.)  This Court must

27   examine <u>Black II</u> to decide whether the requirements of AEDPA have

28   been met.  <u>Butler</u>, 528 F.3d at 640.

In <u>Black II</u>, the state court noted, "The United States Supreme Court consistently has stated that the right to a jury trial does not apply to the fact of a prior conviction." <u>People v. Black (Black II)</u>, 41 Cal. 4th at 818, 161 P. 3d at 1142, 62 Cal. Rptr. 3d at 583 (citing <u>Cunningham</u>, 549 U.S. at 288; <u>Blakely</u>, 542 U.S. at 301; <u>Apprendi</u>, 530 U.S. at 490; <u>Almendarez-Torres v. United States</u>, 523 U.S. 224 (1998). The California Supreme Court correctly identified controlling federal law. It must also apply that law reasonably.

Here, the sentencing judge explained the basis for the sentence on count one.

> On the 12022.5(A) allegation [personally used a firearm], I am going to impose the upper term of ten years.
>
> Now, I think this is significant. [¶] I have definite concerns about this defendant. [¶] This is his fourth time of having a gun in his possession. There were three other times. [¶] Everything that we did to convince him those three other times that you're not to have a gun, obviously, didn't have an impact, and he knew it.
>
> . . . .
>
> I do think he has a lack of control, and he is dangerous because of that. [¶] So, I think there is a legal basis for that. [¶] I didn't use the priors on the actual 245(B) count one core offense. [¶] So, it's not a double use. I'm using only the 12022.5 allegation.

(Lodgment No. 7, <u>People v. Thepsombandith</u>, Rep.'s Tr., vol. 5, 596-97.)

When Thepsombandith was sentenced in 2006, California's DSL stated that when a statute specifies three possible imprisonment terms, the court shall order imposition of the middle term unless there are circumstances in aggravation or mitigation of the crime. Cal. Penal Code § 1170(b) (West Supp. 2009); Cal. R. Ct. 4.420(a-

1  b) (West 2009).[2]    To determine whether the trial court imposed

2  the sentence in violation of the Constitution, the Court must

3  analyze the aggravating factors on which the judge relied.

4      Under California law, only one aggravating factor is

5  necessary to authorize an upper term sentence.  Butler, 528 F.3d

6  at 642; People v. Black (Black II), 41 Cal. 4th at 815, 161 P.3d

7  at 1140, 62 Cal. Rptr. 3d at 581 (citing Cal. Penal Code §

8  1170(b); People v. Osband, 13 Cal. 4th 622, 728, 919 P.2d 640,

9  709, 55 Cal. Rptr. 2d 26, 55 (1996).)  Moreover, Cunningham

10  explains that Thepsombandith's right to trial by jury is violated

11  if he was sentenced to the upper term based solely on

12  circumstances neither admitted nor submitted to the jury and

13  proved beyond a reasonable doubt.  Cunningham, 549 U.S. at 293;

14  Apprendi, 530 U.S. at 475; see Booker, 543 U.S. at 244; see

15  Blakely, 542 U.S. at 301; see also Butler, 528 F.3d at 648.

16      Thepsombandith contends his sentencing violated clearly

17  established Supreme Court precedent because the trial judge

18  imposed the upper term based on factors a jury did not find.

19  (Traverse 21.)  He argues that the prior conviction exception is

20  inapplicable to his case because the trial judge did not rely

21  solely on prior convictions.  (Id. at 18.)  Rather, the court also

22  considered that Petitioner's lack of control made him dangerous,

23  and he had not been deterred by his prior convictions.  (Traverse

24

25      [2]  Parts of section 1170 of the California Penal Code were
   amended in March of 2007 in response to Cunningham to read: "When
26  a judgment of imprisonment is to be imposed and the statute
   specifies three possible terms, the choice of the appropriate term
27  shall rest within the sound discretion of the court."  Cal. Penal
   Code § 1170(b) (West Supp. 2009).  Rule 4.420 of the California
28  Rules of Court was also amended in 2007.  Cal. R. Ct. 4.420 (West
   2009).

1    18; Lodgment No. 7, Rep.'s Tr., vol. 5, 597.) Thepsombandith
2    argues that one of his prior firearm possessions was a juvenile
3    adjudication, which is not a "prior conviction."  (Traverse 19
4    (citing <u>United States v. Tighe</u>, 266 F.3d 1187, 1195 (9th Cir.
5    2001); Lodgment No. 2, Clerk's Tr., vol. 2, 212.)

6         Respondent contends the trial court properly relied on
7    Thepsombandith's prior convictions when imposing the upper term.
8    (Answer Attach. #1 Mem. P. & A. 14.)  Respondent cites <u>Butler</u>,
9    stating that this finding did not require the trial court to make
10   any "qualitative evaluations of the nature or seriousness of past
11   crimes."  (<u>Id.</u> (citing <u>Butler</u>, 528 F.2d at 644-46).)

12        Thepsombandith had two prison priors at the time of
13   sentencing:  (1) taking a vehicle while in possession of a gun and
14   (2) being in possession of a firearm while on parole.  (Lodgment
15   No. 1, Clerk's Tr., vol. 1, 7; Lodgment No. 2, Clerk's Tr., vol.
16   2, 213; Cal. Penal Code §§ 10851(a), 12022(a)(1), 12021(a)(1).)
17   Separately, he had numerous juvenile adjudications for burglary,
18   possession of a concealed firearm, and two instances of possession
19   of burglary tools.  (Lodgment No. 2, Clerk's Tr., vol. 2, 212;
20   Cal. Penal Code §§ 459, 12025(b), 466 (West Supp. 2009).)

21        The United States Supreme Court has recognized two exceptions
22   to a defendant's Sixth Amendment right to a jury trial.  First, a
23   fact admitted by the defendant may be used to increase his or her
24   sentence beyond the maximum.  <u>Blakely</u>, 542 U.S. at 303.  Second,
25   the right to a jury trial and the proof beyond a reasonable doubt
26   requirement do not apply to the fact of a prior conviction.  <u>Id.</u>;
27   see <u>Apprendi</u>, 530 U.S. at 490.
28

At the time of Thepsombandith's sentence, he had two prior felony convictions.  (Lodgment No. 1, Clerk's Tr., vol. 1, 7; Lodgment No. 2, Clerk's Tr., vol. 2, 213.)  "[I]f at least one of the aggravating factors on which the judge relied in sentencing [defendant] was established in a manner consistent with the Sixth Amendment, [Defendant's] sentence does not violate the Constitution."  <u>Butler</u>, 528 F.3d at 643.  Accordingly, the fact of Thepsombandith's prior convictions was sufficient by itself to subject him to the upper term.

The prior conviction exception does not extend to qualitative evaluations about the nature or seriousness of past crimes because such determinations cannot be made solely by looking to the documents of conviction.  <u>Butler</u>, 528 F.3d at 644 (citing <u>United States v. Kortgaard</u>, 425 F.3d 602, 607 (9th Cir. 2005) (holding that the seriousness of past offenses and the likelihood of recidivism are facts that fall outside of the prior conviction exception); <u>Stokes v. Schriro</u>, 465 F.3d 397, 404 (9th Cir. 2006) (deciding whether the present crime is strikingly similar to a past crime also falls outside of the prior conviction exception)).  Nor does the exception apply to past convictions as a juvenile because juvenile proceedings lack the Sixth Amendment protections that adult trials provide.  <u>Butler</u>, 528 F.3d at 644-45 (citing <u>United States v. Tighe</u>, 266 F.3d at 1193-95) (explaining that "the 'prior conviction' exception to <u>Apprendi</u>'s general rule must be limited to prior convictions that were themselves obtained through proceedings that included the right to a jury trial and proof beyond a reasonable doubt[]") (citing <u>Apprendi</u>, 530 U.S. at 496).

41

The aggravating circumstance justifying Thepsombandith's sentence was his prior convictions; specifically, he had been in possession of a gun on three prior occasions in the course of his prior convictions. "This is his fourth time of having a gun in his possession. There were three other times." (Lodgment No. 7, Rep.'s Tr., vol. 5, 597.) The aggravating factor could be determined solely by looking to the documents of conviction. Butler, 528 F.3d at 646. The determination was not based solely on qualitative evaluations, the seriousness of his past crimes, or the likelihood of recidivism. See Kortgaard, 425 F.3d at 607-08. Nor was the determination based solely on Thepsombandith's juvenile adjudication. See Butler, 528 F.3d at 644 (citing Tighe, 266 F.3d at 1193-95). Even if the sentencing judge considered the juvenile adjudication when sentencing Thepsombandith, the judge was permitted to rely on the prior gun possessions established by the two remaining convictions. (Lodgment No. 1, Clerk's Tr., vol. 1, 7; Lodgment No. 2, Clerk's Tr., vol. 2, 213.) Importantly, only one aggravating factor is necessary, and there were two adult priors. Butler, 528 F.3d at 642-43; (Lodgment No. 1, Clerk's Tr., vol. 1, 7; Lodgment No. 2, Clerk's Tr., vol. 2, 213.)

The Court must examine the whole record, including the evidence presented at sentencing. Butler, 528 F.3d at 651. Unlike Butler, the probation officer's report referred to at the time of sentencing has been lodged; this Court is able to review what evidence was submitted to the trial court. (Lodgment No. 1, Clerk's Tr., vol. 1, 7; Lodgment No. 2, Clerk's Tr., vol. 2, 208-21; see Butler, 528 F.3d at 651 ("[W]e have not found a probation report or any other document that reflects [Defendant's]

probationary status at the time of the crime."); see also Williams
v. Scribner, No. CV 07-2694-R (AGR), 2008 U.S. Dist. LEXIS 51032,
at *2 (9th Cir. June 30, 2008).  The sentencing judge had
sufficient evidence from which she could find the aggravating
factor to justify imposition of the upper term.  Consequently, the
state supreme court's decision was not contrary to, or an
unreasonable application of, clearly established Supreme Court
law.  28 U.S.C. § 2254(d)(1).  Moreover, the state court decision
was based on a reasonable determination of the evidence.  See 28
U.S.C. § 2254 (d)(2).

### 3.    Harmless Error

Even if there was a constitutional error, any error was
harmless.  At least one aggravating factor supports Petitioner's
upper term sentence.  Assuming federal law was clearly established
and the state court erred in its analysis of Thepsombandith's
sentencing claim, the Court must apply a harmless error analysis.
Washington v. Recuenco, 548 U.S. 212, 221 (2006); United States v.
Zepeda-Martinez, 470 F.3d 909, 910 (9th Cir. 2006); United States
v. Banuelos, 322 F.3d 700, 705 (9th Cir. 2003).  Petitioner is
only entitled to habeas relief "if the sentencing error in his
case is not harmless."  Butler, 528 F.3d at 648 (citing Recuenco,
548 U.S. at 220).

An error is harmless if it does not have a "substantial and
injurious effect on [Defendant's] sentence."  Butler, 528 F.3d at
648) (citing Hoffman v. Arave, 236 F.3d 523, 540 (9th Cir. 2001));
see also Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).
Furthermore, an error is "harmless if it is not prejudicial as to
just one of the aggravating factors at issue."  Butler, 528 F.3d

at 648.   A court must grant relief if it is in grave doubt as to whether a jury would have found the aggravating factors beyond a reasonable doubt.   Id. (citing O'Neal v. McAninch, 513 U.S. 432, 436 (1995)).

The record illustrates Thepsombandith was convicted of taking a vehicle while in possession of a gun on December 9, 1994, and sentenced to three years in prison, creating his first prison prior.   (Lodgment No. 1, Clerk's Tr., vol. 1, 7; Lodgment No. 2, Clerk's Tr., vol. 2, 213.)   On December 4, 1998, he was convicted of being in possession of a firearm while on parole and sentenced to two years in prison, creating his second prison prior.   (Id.) The trial judge was presented with evidence of both prior convictions.   In fact, the trial judge referenced the prior convictions when she imposed the upper term.   "This is his fourth time of having a gun in his possession.   There were three other times."   (Id. at 597.)   Furthermore, Thepsombandith admitted to having the prior convictions.   (Lodgment No. 2, Clerk's Tr. Vol. 2, 307, 314.)   Therefore, any error in using the fact of Petitioner's prior convictions to impose the upper term was harmless because there is no "grave doubt" that the jury would have found the aggravating factors beyond a reasonable doubt.   See O'Neal, 513 U.S. at 436.

Habeas relief is not warranted on claim three.   The state court decision was not contrary to, and did not involve an unreasonable application of, clearly established law as determined by the United States Supreme Court.   Nor was it based on an unreasonable determination of the facts in light of the evidence.

1  For this reason, the Court should deny habeas relief based on this

2  ground in Thepsombandith's Petition.

3       **D.   Evidentiary Hearing**

4       In his Traverse, Thepsombandith requests an evidentiary

5  hearing or declaration from his trial counsel regarding his

6  ineffective assistance of counsel claim.  (Traverse 23.)

7  Specifically, Petitioner seeks testimony from defense counsel

8  regarding the failure to object to the prosecutorial misconduct at

9  trial.  (<u>Id.</u>)

10      Respondent contends the California courts have already made

11  reasonable factual determinations under 28 U.S.C. § 2254(d), and

12  Thepsombandith's claims do not rely on evidence that is not in the

13  state court record.  (Answer Attach. #1 Mem. P. & A. 16.)  Warden

14  Almager argues that Thepsombandith failed to "present the need to

15  further develop evidence in additional proceedings."  (<u>Id.</u>)

16      Under 28 U.S.C. § 2254(e)(2), as amended by AEDPA, a district

17  court presented with a request for an evidentiary hearing must

18  first determine whether the petitioner failed to develop the

19  factual basis of his claims in state court.  <u>Insyxiengmay v.</u>

20  <u>Morgan</u>, 403 F.3d 657, 670 (9th Cir. 2005) (citing 28 U.S.C. §

21  2254(e)(2)(A–B)); <u>Williams v. Taylor</u>, 529 U.S. at 430.  "[A]

22  failure to develop the factual basis of a claim is not established

23  unless there is a lack of diligence, or some greater fault,

24  attributable to the prisoner or the prisoner's counsel."

25  <u>Williams</u>, 529 U.S. at 432.

26      If a petitioner developed the record in state court, the

27  federal habeas court examines whether an evidentiary hearing is

28

appropriate or required under <u>Townsend v. Sain</u>, 372 U.S. 293

(1963).  There are six <u>Townsend</u> factors to consider:

> (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing.

<u>Insyxiengmay</u>, 403 F.3d at 670 (quoting <u>Townsend</u>, 372 U.S. at 313).

"'An evidentiary haring on a habeas corpus petition is required whenever petitioner's allegations, if proved, would entitle him to relief.'"  <u>Id.</u> at 670 (quoting <u>Turner v. Marshall</u>, 63 F.3d 807, 815 (9th Cir. 1995)).  If a petitioner failed to develop the factual basis of a claim in the state courts, this Court does not have discretion to conduct an evidentiary hearing unless Petitioner shows that the following requirements of 28 U.S.C. § 2254(e)(2) are met:

> (A) the claim relies on --
>
>> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>>
>> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2)(A)-(B) (West 2008).  After satisfying § 2254(e)(2)(A)-(B), Petitioner must then "meet one of the <u>Townsend</u>

factors and make colorable allegations that, if proved at an evidentiary hearing, would entitle him to habeas relief." Insyxiengmay, 403 F.3d at 670.

The Supreme Court has been careful to limit the scope of federal intrusion into state criminal adjudications and to safeguard the states' interest in the integrity of their criminal proceedings. Williams, 529 U.S. at 436 (citing Coleman v. Thompson, 501 U.S. 722, 726, (1991); McCleskey v. Zant, 499 U.S. 467, 493 (1991). "Federal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings." Williams, 529 U.S. at 437.

Thepsombandith appears to claim that he failed to develop the state court record and maintains that to demonstrate ineffective assistance of counsel, he must prove his counsel's omissions were the result of negligence, oversight, or unreasonable strategy. (Traverse 23.)

Indeed, an evidentiary hearing is appropriate if, among other things, the state court hearing did not adequately develop the facts or the fact-finding procedure was inadequate. Townsend, 372 U.S. at 313. But Thepsombandith's ineffective assistance claim was fully developed in the state court record and considered by the court of appeal. (See Lodgment No. 13, People v. Thepsombandith, No. D047885, slip op. at 9-11.) A transcript of the prosecutor's closing argument was included in the appellate record. (See Lodgment No. 7, Rep.'s Tr., vol. 5.) The court of appeal quotes from the transcript. (Lodgment No. 7, Rep.'s Tr.,

1   vol. 5, 522-23, 536-37; Lodgment No. 13, <u>People v. Thepsombandith</u>,

2   No. D047885, slip op. at 5-6.)

3        Because the factual basis of Thepsombandith's ineffective

4   assistance of counsel claim was developed in state court, he must

5   satisfy one of the six <u>Townsend</u> factors to be entitled to an

6   evidentiary hearing.  <u>Insyxiengmay</u>, 403 F.3d at 670.  None of the

7   factors requires a hearing in his case.

8        The merits of Petitioner's ineffective counsel claim were

9   resolved at the state appellate level.  As discussed above, the

10  appellate court's factual determination regarding the alleged

11  negligence or oversight of trial counsel when he failed to object

12  is supported by the record.  Additionally, the fact-finding

13  procedure employed was adequate to give Thepsombandith a full and

14  fair hearing.  Thepsombandith has made no allegation of newly

15  discovered evidence.  The material facts were adequately developed

16  at the state court hearing, and there is no indication that the

17  state trier of fact did not provide a full and fair fact hearing.

18       Even if Thepsombandith could meet one of the <u>Townsend</u> factors

19  for his ineffective assistance of counsel claim, a hearing is only

20  required where "petitioner's allegations, if proved, would entitle

21  him to relief.'"  <u>Id.</u> (quoting <u>Turner v. Marshall</u>, 63 F.3d 807,

22  815 (9th Cir. 1995)).  Assuming the facts are as Thepsombandith

23  alleges and his trial counsel's omissions were the result of

24  negligence, oversight, or unreasonable strategy, Thepsombandith is

25  not entitled to habeas relief.  (<u>See</u> Traverse 23.)  At most,

26  Petitioner's ineffective assistance claim would save his

27  prosecutorial misconduct claim from being procedurally defaulted.

28  But the prosecutorial misconduct claim fails on its merits.

1      Furthermore, the federal habeas court need not determine the

2  actual reason for counsel's failure to object as long as the

3  failure falls within the range of reasonable representation.

4  Morris v. California, 966 F.2d 448, 456-57 (9th Cir. 1991), cert.

5  denied, 506 U.S. 831 (1992) (citation omitted).  Petitioner does

6  not satisfy any of the Townsend factors; consequently, his request

7  for an evidentiary hearing is **DENIED**.

8                          **V. CONCLUSION**

9      For the reasons set forth above, Petitioner's request for an

10  evidentiary hearing is **DENIED**.  In addition, the Court recommends

11  that the Petition for Writ of Habeas Corpus be **DENIED**.

12      This Report and Recommendation will be submitted to the

13  United States District Court judge assigned to this case, pursuant

14  to the provisions of 28 U.S.C. § 636(b)(1).  Any party may file

15  written objections with the Court and serve a copy on all parties

16  on or before June 26, 2009.  The document should be captioned

17  "Objections to Report and Recommendation."  Any reply to the

18  objections shall be served and filed on or before July 10, 2009.

19  The parties are advised that failure to file objections within the

20  specified time may waive the right to appeal the district court's

21  order.  Martinez v. Ylst, 951 F.2d 1153, 1157 (9th Cir. 1991).

22

23  Dated:  May 18, 2009                    _____

24                                          RUBEN B. BROOKS
                                            United States Magistrate Judge
25  cc:  Judge Benitez
          All parties of record
26

27

28