FILED

09 DEC -2 PM 12: 13

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

DEPUTY

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUNE THEPSOMBANDITH,<br><br>Petitioner,<br>vs.<br>V.M. ALMAGER, Warden,<br><br>Respondent. | CASE NO. 07-cv-02248 BEN (RBB)<br><br>ORDER ADOPTING REPORT AND RECOMMENDATION |

## INTRODUCTION

Petitioner June Thepsombandith, a state inmate proceeding pro se, filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (the "Petition"), alleging (1) prosecutorial misconduct; (2) ineffective assistance of counsel; and (3) violation of due process at sentencing. (Docket No. 1, 6-7.)

Respondent filed an Answer, asserting the State Courts properly rejected Petitioner's claims that the prosecutor committed misconduct and his counsel was ineffective for failing to object, and that this Court should reject Petitioner's challenge to his upper term sentence. (Docket No. 13.)

On October 28, 2008, Petitioner filed a Traverse, which included a request for an evidentiary hearing. (Docket No. 17.)

On May 18, 2009, Magistrate Judge Ruben Brooks issued a Report and Recommendation, recommending that the Petition be denied and denying Petitioner's request for an evidentiary hearing. For the reasons stated below, the Court adopts the Report and Recommendation and **DENIES** Petitioner's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254.

09cv0518

1    **FACTUAL BACKGROUND**

2    Petitioner began dating Kathy Sayrath in December of 2004. (Lodgment 5, Rep.'s Tr., vol. 3,

3    64.)

4    On March 18, 2005, a fight ensued between Petitioner and Sayrath when Sayrath told Petitioner

5    she wanted to end the relationship. (*Id.* at 66-67.) Petitioner became so enraged during the fight that

6    he picked up a golf club and began beating Sayrath repeatedly on her legs, thigh, arm, and back while

7    Sayrath was sitting on the couch. (*Id.* at 68-71.) Thereafter, Sayrath was treated at the hospital

8    emergency room for a fractured right forearm caused by Petitioner's beating. (*Id.* at 70.)

9    On March 21, 2005, Sayrath returned to Petitioner's house to recover her belongings.

10   (Lodgment No. 5, Rep.'s Tr., vol. 3, 81.) Sayrath was accompanied by her two cousins who waited

11   outside. (*Id.* at 81, 84-85, 182, 187-88.) Petitioner was alone in the house when Sayrath entered and

12   requested that Sayrath sit down so that they could talk. Sayrath complied. (*Id.* at 85-86.)

13   During this conversation Petitioner revealed that he had a hidden gun near him. Petitioner then

14   grabbed the gun, stood up, pointed the gun at Sayrath's head, and yelled that he was not afraid to shoot

15   her and that he would shoot himself as well. (*Id.* at 86-90.) Petitioner pointed the gun to the ceiling

16   and fired one shot, causing Sayrath's cousins to come running into the house. (*Id.* at 90, 189, 210.)

17   Petitioner then pointed the gun at one of the cousins (named Sherry Gonazales) and said "Are you

18   going be a fucking hero?" (Lodgment No. 5, Rep.'s Tr., vol. 3, 90-91.)

19   As the cousins began to back out of the doorway, Petitioner's father, mother and grandfather

20   appeared. (Lodgment No. 6, Rep.'s Tr., vol. 4, 353; Lodgment No. 5, Rep.'s Tr., vol. 3, 192.) The

21   three women then ran to their car and left. (Lodgment No. 5, Rep.'s Tr., vol. 3, 91, 195.)

22   The three women were then pulled over by the police for failing to have rear license plate.

23   (Lodgment No. 5, Rep.'s Tr., vol. 3, 93; Lodgment No. 6, Rep.'s Tr., vol. 4, 427-29.) The women

24   informed the police officer of the incident. The police searched Petitioner's house later that day and

25   discovered a shell casing on top of a speaker and a bullet hole in the ceiling. (Lodgment No. 5, Rep.'s

26   Tr., vol. 3, 272-75.) The police officers arrested Petitioner later that day. (Lodgment No. 5, Rep.'s

27   Tr., vol. 3, 262.)

28

- 2 -

**PROCEDURAL BACKGROUND**

On April 15, 2005, the San Diego County District Attorney filed an Information charging Petitioner with two counts of assault with a firearm (the first count for Sayath; the second count for her cousin, Sherry Gonzales). The Information further accused Petitioner of discharging a firearm in a grossly negligent manner, being a felon in possession of a firearm, being a felon in possession of ammunition, and committing great bodily injury. The Information made additional allegations: (1) As to counts one and two, Petitioner used a firearm within the meaning of Cal. Penal Code § 12022.5(a); (2) as to count six, Petitioner personally used a deadly weapon–a golf club–within the meaning of Cal. Penal Code § 1192.7(c)(23); and (3) as to count six, Petitioner inflicted great bodily injury within the meaning of Cal. Penal Code § 12022.7(a). (Lodgment No. 1, Clerk's Tr., vol. 1, 5-6.)

On October 13, 2005, a jury convicted Petitioner of all charges and found all allegations true. (Lodgment No. 2, Clerk's Tr., vol. 2, 307-313.) Petitioner admitted to two prison priors within the meaning of Cal. Penal Code §§ 667.5(b) and 668. (*Id.* at 307, 314.) The judge sentenced Petitioner to a prison term of twenty-four (24) years. (*Id.* at 319.)

On June 5, 2006, Petitioner filed his opening brief in the California Court of Appeals, and supplemented it eight weeks later. In his opening brief, Petitioner asserted the "prosecutor committed misconduct in argument by misstating the law of assault, and trial counsel was ineffective for failing to object..." (Lodgment No. 8.) Petitioner also argued he "was denied due process of law by imposition of an increased term of imprisonment in violation of *Blakely v. Washington*, 542 U.S. 296 (2004); imposition of the prison prior enhancements was an impermissible dual use of facts." (*Id.*; see also Lodgment No. 9.)

On December 12, 2006, the California Court of Appeals affirmed the judgment.

On January 16, 2007, Petitioner filed a petition for review with the California Supreme Court. On February 21, 2007, the Supreme Court granted review of the petition, but eventually dismissed the case on September 12, 2007.

On November 27, 2007, Petitioner filed a Petition for Writ of Habeas Corpus which is currently pending before this Court.

09cv0518

1

## STANDARD OF REVIEW

2    To present a cognizable federal habeas corpus claim, a state prisoner must allege that his

3  conviction was obtained "in violation of the Constitution or laws or treaties of the United States." 28

4  U.S.C. § 2254(a). A petitioner must allege that the state court violated his federal constitutional rights.

5  *Hernandez v. Ylst*, 930 F.2d 714, 719 (9th Cir. 1991).

6    In *Lockyer v Andrade*, 538 U.S. 63 (2003), the United States Supreme Court stated a federal

7  habeas court is not required "to adopt any one methodology in deciding the only question that matters

8  under § 2254 (d)(1)–whether a state court decision is contrary to, or involved an unreasonable

9  application of, clearly established Federal law." (*Id.* at 71) (citation omitted). A federal court is not,

10  therefore, required to review the state court decision de novo. (*Id.*) Rather, a federal court can proceed

11  directly to the reasonableness analysis under § 2254(d)(1). (*Id.*)

12    Furthermore, with respect to factual findings by the trial court, Section 2254 provides, "a

13  determination of a factual issue made by a State court shall be presumed to be correct. The applicant

14  shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

15  28 U.S.C. § 2254(e)(1).

16

## DISCUSSION

17  **I.    PETITIONER'S   PROSECUTORIAL   MISCONDUCT   CLAIM   IS**

18  **PROCEDURALLY BARRED**

19    The alleged misconduct is as follows. Petitioner argues that, during trial, after his counsel

20  explained in closing argument that Sayrath did not know the gun was loaded and, therefore, the

21  elements of assault were not satisfied, the prosecutor impermissibly stated the following:

22    It doesn't matter if Kathy [Sayrath] thought the gun was loaded or not. It played
no role and needs not be shown.

23

24    Who cares if she knew it was loaded or not?

25    The fact is, [Thepsombandith] knew what was going on.    He knew it was a
gun; he knew there were bullets in there; he was the one pulling the trigger. Okay?

26

27    Don't be confused; don't be lead astray.  Follow what the law tells you.  All
right?

28    It doesn't matter whether Kathy knew that gun was loaded.

- 4 -

1    Right after that, the defense concedes if Kathy did know the gun was loaded,
     and he did what he did, it would have been an assault.  Okay?

2
            That's a concession that he's guilty of count one and because the law will tell
3    you that Kathy did not need to have knowledge.  (Lodgment No. 7, Rep.'s Tr., vol. 5,
     536-37.)

4

5    The prosecutor continued,

6            It doesn't matter whether the gun was loaded or not, you can still assault
     somebody with it.  Okay?

7
            Also, there's no requirement that the gun be loaded for an assault to be carried
8    out.  That's not an element of the assault with a firearm.  (*Id.* at 537.)

9
            Petitioner argues the prosecutor misstated the law of assault and, therefore, engaged in
10
     prosecutorial misconduct depriving him of his constitutional right to a fair trial.
11
            Respondent argues Petitioner waived his prosecutorial misconduct claim when he failed to
12
     object at trial.  (Docket No. 13.)  Respondent relies on the California Court of Appeals' holding that
13
     Petitioner waived his claim of error on appeal when he failed to object to the alleged misconduct.
14
     (*Id.*; Lodgment No. 13.)  Respondent argues that the appellate court's holding procedurally bars this
15
     Court's review of Petitioner's prosecutorial misconduct claim.  The Court agrees.
16
                  A.    *Respondent Has Demonstrated that the Procedural Bar Applies*
17
            A federal court "'will not review a question of federal law decided by a state court if the
18
     decision of that court rests on state law ground that is independent of the federal question and adequate
19
     to support the judgment.'"  *Calderon v. United States District Court for the Eastern District of*
20
     *California (Bean)*, 96 F.3d 1126, 1129 (9th Cir. 1996).  "In order to constitute adequate and
21
     independent grounds sufficient to support a finding of procedural default, a state rule must be clear,
22
     consistently applied, and well-established at the time of the petitioner's purported default."  *Wells v.*
23
     *Maass*, 38 F.3d 1005, 1010 (9th Cir.1994).
24
            A federal habeas court looks to the last reasoned State Court opinion to determine whether a
25
     petitioner's claim is procedurally barred.  *Vansickel v. White*, 166 F.3d 953, 957 (9th Cir.1999).  Here,
26
     the last State Court opinion on Petitioner's claim was the opinion issued by the California Court of
27
     Appeals on December 12, 2006.  In that opinion, the Court of Appeals stated Petitioner's claim was
28
     procedurally barred based on state law requiring claims of prosecutorial misconduct to be raised at trial

- 5 -

1  to preserve them for appeal.  (Lodgment No. 13.)

2       Petitioner argues that this Court should not look to the California Court of Appeals decision,

3  but rather should look to the California Supreme Court's opinion which did not address Petitioner's

4  claim.  Petitioner argues that because the Supreme Court's opinion did not address his claim of

5  prosecutorial misconduct, this Court is not barred from reviewing his claim.  Petitioner's argument

6  lacks merit. The United States Supreme Court has held that "[w]here there has been one reasoned state

7  judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the

8  same claim rest upon the same ground." *Ylst*, 501 U.S. at 803.  Therefore, based on *Ylst*, this Court

9  looks through the California Supreme Court's decision to the last reasoned decision addressing this

10 issue, namely the decision of the California Court of Appeal.   As the Court of Appeals found that

11 Petitioner's claim for prosecutorial misconduct was waived under the state contemporaneous objection

12 rule, this Court is barred from reviewing Petitioner's claim, as long as the contemporaneous objection

13 rule is both adequate and independent.

14      Petitioner does not dispute that the state contemporaneous objection rule is both adequate and

15 independent, nor can he.  The Ninth Circuit has found the contemporaneous objection rule to be an

16 adequate procedural bar. *Rich v. Calderon*, 187 F.3d 1064, 1070 (9th Cir. 1999).  The Ninth Circuit

17 has likewise found that the California contemporaneous objection rule is independent of federal law.

18 *See Vansickel*, 166 F.3d at 957.  As such, this Court finds that the contemporaneous objection rule is

19 both adequate and independent.

20      The fact that the California Court of Appeals also addressed the merits of Petitioner's

21 prosecutorial misconduct claim does not, as Petitioner contends, mean that the procedural bar does not

22 apply.  The United States Supreme Court has recognized that the procedural bar still applies despite

23 a state court's decision on the merits of a federal claim, as long as the state court invoked, as the State

24 Court invoked in this case, the procedural bar rule as a separate basis for its decision. *Harris v. Reed*,

25 489 U.S. 255, 264, n. 10; (Lodgment No. 13.)

26                 B.   *Petitioner Has Failed to Demonstrate Cause or Prejudice Rebutting*

27                        *Application of the Procedural Bar Rule*

28      The procedural bar rule does not apply if a habeas corpus petitioner "can demonstrate cause

1    for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate

2    that failure to consider the claim [] will result in a fundamental miscarriage of justice." *Coleman v.*

3    *Thompson*, 501 U.S. 722, 749-50 (1991); *see also Murray v. Carrier*, 477 U.S. 478, 485 (1986) (citing

4    Wainwright v. Sykes, 433 U.S. 72, 87 (1977)).

5          Petitioner argues that ineffective assistance of counsel at trial constitutes "cause" and

6    "prejudice," excepting this case from the procedural bar rule.  The Court notes that, if proven,

7    constitutionally ineffective assistance of counsel may constitute "cause" preventing a petitioner from

8    complying with a procedural rule. *McClesky v. Zant*, 499 U.S. 467, 493 (1991).

9          To establish ineffective assistance, the petitioner must demonstrate that his or her counsel's

10   performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S.

11   668, 687-88 (1984).  First, the petitioner must show that the attorney's performance was deficient. *Id.*

12   at 687.  Second, "the [petitioner] must show that the deficient performance prejudiced the defense."

13   *Id.* In other words, "[t]here is a reasonable probability that, but for counsel's unprofessional errors, the

14   result of the proceeding would have been different.  A reasonable probability is a probability sufficient

15   to undermine confidence in the outcome." *Id.* at 694.  Both prongs must be satisfied.

16         A lower court's review of counsel's performance is highly deferential, and there is a strong

17   presumption counsel rendered adequate assistance and exercised reasonable professional judgment.

18   *United States v. Ferreira-Alameda*, 815 F.2d 1251, 1253 (9th Cir. 1987) (citations omitted); *Butcher*

19   *v. Marquez*, 758 F.2d 373, 376 (9th Cir. 1985) (citing *Strickland*, 466 U.S. at 690).

20         Petitioner has not overcome the presumption of competency in this case.  Here, the Court of

21   Appeals concluded that the prosecutor was talking about count one, not count two, when he said,

22   "Also, there's no requirement that the gun be loaded for an assault to be carried out." (Lodgment No.

23   7, Rep.'s Tr., vol. 5, 537; Lodgment No. 13, *People v. Thepsombandith*, No. D047885, slip op. at 8.)

24   The record indicates that the prosecutor was clarifying the law regarding the assault of Sayrath alleged

25   in count one, and he continued discussing the assault on her. (Lodgment No. 7, Rep.'s Tr., vol. 5, 537.)

26   The federal court "need not determine the actual explanation for trial counsel's failure to object, so

27   long as his failure to do so falls within the range of reasonable representation." *Morris*, 966 F.2d at

28   456-57 (citation omitted).

1   Trial counsel's failure to object did not fall below an objective standard of reasonableness. *See*

2   *Id.* at 456 (stating that an effective advocate could have reasonably decided not to object). The

3   prosecutor made several references to "Kathy," the victim in count one, directly before and after the

4   complained of statement. (Lodgment No. 7, Rep.'s Tr., vol. 5, 536.) The Court of Appeal found that

5   the record was clear that the prosecutor's argument was directed to the assault alleged in count one.

6   (Lodgment No. 13, *People v. Thepsombandith*, No. D047885, slip op. at 8.) This conclusion is a

7   reasonable determination of the facts.

8   The Court of Appeal also found that even if the jury construed the prosecutor's argument as

9   applying to count two, as Petitioner asserts, the result was not prejudicial. Case law demonstrates that

10   the fundamental miscarriage of justice exception to a procedural default is intended to apply only in

11   extraordinary cases when a constitutional violation results in the conviction of an innocent person.

12   *Schlup v. Delo*, 513 U.S. 298, 327 (1995) (citing *Murray v. Carrier*, 477 U.S. at 496).

13   Thepsombandith "cannot establish prejudice because there is no reasonable probability that but for

14   counsel's error, the result of the trial would have been different." *Vansickel*, 166 F.3d at 958 (citing

15   *White v. Lewis*, 874 F.2d 599, 604 (9th Cir. 1989)); see *Strickland*, 466 U.S. at 694.

16   In his Traverse, Petitioner acknowledges that "the prosecutor's statement was specifically

17   directed at count one . . . ." (Traverse 5.) Nonetheless, Petitioner asserts "the argument could

18   erroneously be applied to count two." (*Id.* at 9.) Petitioner further argues that the alleged misconduct

19   lowered the prosecution's burden of proof on the element of "present ability" under Penal Code section

20   240.  However, under the circumstances of this case, there is no reasonable probability that, but for

21   the prosecutor's statements, the jury would not have found that the gun was loaded or that Petitioner

22   had the "present ability" to carry out the assault, as required under Penal Code section 240.

23   The evidence in this case is clearly sufficient for the jury to believe the gun was loaded and to

24   find Petitioner guilty of assault on Sayfarth's cousin.  First, the evidence indicates that the gun was

25   loaded when Petitioner pointed it at Sayfarth's cousin.  Merely seconds after she heard what she

26   thought was a gunshot, Sayfarth's cousin ran into the home and saw Petitioner pointing a black object

27   she thought was a gun at Sayrath; he then pointed it at her.  (Lodgment No. 6, Rep.'s Tr., vol. 4,

28   350-52.) Sayfarth's cousin testified that she heard Petitioner cock the gun; it sounded "[l]ike putting

1   the bullet in the chamber." (*Id.* at 351.)  Petitioner said, "Are you going to be a fucking hero?"

2   (Lodgment No. 5, Rep.'s Tr., vol. 3, 90-91.)

3       Petitioner has not established his counsel's deficient performance rendered the result of the trial

4   unreliable, nor has he demonstrated a reasonable probability that he would have prevailed if his

5   attorney had timely objected to the prosecution's statement. *See Fretwell v. Lockhart*, 506 U.S. 364,

6   372 (1993) (citing *Strickland*, 466 U.S. at 687).  Therefore, Petitioner has not established cause and

7   prejudice to except this case from the procedural bar set forth above.

8           C.      *Prosecutor's Closing Argument Did Not Constitute Prosecutorial Misconduct*

9       Notwithstanding the above, the prosecutor's closing argument did not constitute prosecutorial

10  misconduct.

11      To demonstrate prosecutorial misconduct, Petitioner must show: (1) the prosecutor's comment

12  was improper, and (2) the comment "so infected the trial with unfairness as to make the resulting

13  conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 180-81 (1986); *Tak Sun*

14  *Tan v. Runnels*, 413 F.3d 1101, 1112 (9th Cir. 2005).  "The prosecutor's comments must be evaluated

15  in light of the defense argument that preceded it . . . ." *Darden*, 477 U.S. at 182.

16              1.    *Improper Comments*

17      Habeas relief may be granted where adjudication of the claim (i) "resulted in a decision that

18  was contrary to, or involved an unreasonable application of, clearly established Federal law, as

19  determined by the Supreme Court of the United States" (28 U.S.C. § 2254(d)(1)); or (2) "resulted in

20  a decision that was based on an unreasonable determination of the facts in light of the evidence

21  presented in the State court proceeding." (28 U.S.C. § 2254(d)(2)).

22      Here, the alleged improper comment was the prosecutor's statement that the gun need not be

23  loaded to commit assault. Petitioner claims the statement, although directed at count one, was general

24  enough for the jury to believe it applied to both counts of assault. (*Id.*)  Respondent argues, and the

25  Court of Appeal concluded, that the statement was legally correct as to count one, and the argument

26  was harmless as to count two.  (Answer Attach. #1 Mem. P. & A. 8; Lodgment No. 13, *People v.*

27  *Thepsombandith*, No. D047885, slip op. at 8-9.)  This Court agrees.

28      "Counsel are given latitude in the presentation of their closing arguments . . . ." *Ceja v.*

1   *Stewart*, 97 F.3d 1246, 1253-54 (9th Cir. 1996) (quoting *United States v. Baker*, 10 F.3d 1374, 1415

2   (9th Cir. 1993), cert. denied, 513 U.S. 934 (1994)).  "It is helpful as an initial matter to place these

3   remarks in context." *Darden*, 477 U.S. at 179.  In *Darden*, the prosecutors made several improper

4   statements in closing argument.  For instance, the prosecution recommended the death penalty for the

5   defendant, stating, "'That's the only way I know that he is not going to get out on the public.'"  *Id.* at

6   180 n.10.  Then, the prosecutor stated, "'As far as I am concerned, . . . [Defendant is] an animal . . .

7   .'" *Id.* at n.11.  "'I wish [the decedent] had had a shotgun in his hand . . . and blown [Defendant's] face

8   off.  I wish that I could see him sitting here with no face, blown away by a shotgun.'" *Id.* at n.12.  The

9   Court held that the comments "undoubtedly were improper." *Id.* at 180.  Ultimately, however, the

10  Court determined the defendant was not deprived of a fair trial. *Id.* at 181.

11        Similarly here, the prosecutor's argument must be viewed in context.  Here, during closing

12  arguments, with respect to count one, defense counsel himself misstated the law on assault when he

13  emphasized that Sayrath did not know the gun was loaded until after Thepsombandith fired it.

14  (Lodgment No. 7, Rep.'s Tr., vol. 5, 522; see Lodgment No. 13, *People v. Thepsombandith*, No.

15  D047885, slip op. at 5.) In response, the prosecutor correctly explained that Sayrath's knowledge was

16  not an element of assault stating, "[Knowledge] played no role and need[] not be shown." (Lodgment

17  No. 13, *People v. Thepsombandith*, No. D047885, slip op. at 6.)  The prosecutor's following statement

18  -- that the gun does not have to be loaded to commit assault -- was, therefore, not improper as applied

19  to count one.  (*Id.* at 8.)  Similar to *Darden*, the prosecutor's argument here "was invited by or was

20  responsive to the opening summation of the defense." *Darden*, 477 U.S. at 182.  "The idea of 'invited

21  response' is used not to excuse improper comments, but to determine their effect on the trial as a

22  whole." *Id.*  "[T]he challenged statement was one comment by the prosecutor in his closing argument

23  that consisted of 36 pages of transcript." (Lodgment No. 13, *People v. Thepsombandith*, No. D047885,

24  slip op. at 9.)  Therefore, for purposes of 28 U.S.C. § 2254(d)(1), the appellate court's decision that

25  the prosecutor's statements were not improper is neither contrary to, nor an unreasonable application

26  of, clearly established Federal law.

27        Habeas relief may also be granted under 28 U.S.C. § 2254(d)(2) if the adjudication of the claim

28  "resulted in a decision that was based on an unreasonable determination of the facts in light of the

09cv0518

1  evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  As noted, the relevant

2  State Court proceeding at issue here is the decision by the Court of Appeal on December 12, 2006.

3  Although the Court of Appeal held that Petitioner waived the prosecutorial misconduct claim, it

4  nonetheless considered the claim on the merits and determined reversal was not required. Specifically,

5  the Court of Appeal stated,

6          In closing argument defense counsel raised the fact that Sayrath
         was not aware the gun was loaded until after Thepsombandith fired it,
7          misstating the law on assault: "The knowledge of the deadly capacity,
         such as it were of this firearm, was only known after the discharge. [¶]
8          It never again was pointed at her.  She never stated that the firearm was
         pointed at her again. [¶] I dare say that if the firearm had been pointed
9          at her a second time, we'd have an assault on [Sayrath] by means of a
         firearm."

10
11         On rebuttal, in response to this argument by defense counsel,
         the prosecutor stated, "Now, here's one you've got to be real careful
12         with.  [Sayrath] didn't know the gun was loaded, so it can't be assault.
         Did you hear that?"  The prosecutor went on to explain, correctly, that
13         Sayrath's knowledge was not an element of the charge of assault: "The
         person committing the act — that's him — the person committing the act
14         was aware of facts that would lead a reasonable person to realize that
         a direct, natural, and probable result of this act, that physical force
15         would be applied to another person.  [¶] It doesn't matter if [Sayrath]
         thought the gun was loaded or not. It played no role and needs not be
16         shown.  [¶] . . . [¶] The fact is, he knew what was going on. He knew
         it was a gun; he knew there were bullets in there; he was the one pulling
         the trigger."

17
18         In further discussing count 1 assault against Sayrath, however,
         the prosecutor then made the following statements:  "It doesn't matter
19         whether the gun was loaded or not, you can still assault somebody with
         it.  Okay?  [¶] Also, there's no requirement that the gun be loaded for
20         an assault to be carried out.  That's not an element of the assault with
         a firearm." (Italics added.)

21
22  (*Id.* at 5-6.)

23  As noted, defense counsel misstated the law of assault in closing argument: "[Sayrath] testified

24  she didn't even know [the gun] was loaded at the point in time that it was up against her head."

25  (Lodgment No. 7, Rep.'s Tr., vol. 5, 522.)  The prosecutor subsequently clarified to the jury that

26  knowledge is not an element of assault.  He made these statements in response to the preceding

27  defense argument.  (*Id.* at 535-36); see *Darden*, 477 U.S. at 179.

28  Moreover, the prosecutor referenced Sayrath ("Kathy")——the victim in count one——directly

before and after stating that "there's no requirement that the gun be loaded." (Lodgment No. 7, Rep.'s

1    Tr., vol. 5, 536.) It is unlikely that the jury applied the statement to Gonzales (*i.e.*, Sayfarth's cousin,

2    the victim in count two) because the argument immediately preceding and following the statement at

3    issue are in the context of discussing "Kathy Sayrath." (*Id.* at 536-37.)   Additionally, the prosecutor

4    did not mention "Sherry Gonzales" until later by stating, "When Sherry came in, she described how

5    [Sayrath] looked." (*Id.* at 537.)

6            In light of these circumstances, the Court finds that the State Court reasonably determined the

7    facts in the record when it held that the prosecution's statement was limited to count one, which was

8    a correct statement of law. (Lodgment No. 13, *People v. Thepsombandith*, No. D047885, slip op. at

9    8-9; see also 28 U.S.C. § 2254(d)(2).)   As such, habeas relief is not warranted under 28 U.S.C.

10   §2254(d)(2).

11                              2.      *Harmless Error*

12           To establish prosecutorial misconduct, the Petitioner must also demonstrate that the

13   prosecutor's comments rendered Petitioner's trial so unfair that his conviction was a denial of due

14   process. *Darden*, 477 U.S. at 181 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).)

15   The misconduct is reviewed in the context of the entire trial. *See, e.g., Greer*, 483 U.S. at 766 (holding

16   that a single question, an immediate objection, and two curative instructions "clearly" demonstrate the

17   prosecutor's improper question did not violate due process); *Donnelly*, 416 U.S. at 639.

18           The Court finds that even if the prosecutor's comment that "there's no requirement that the gun

19   be loaded" could have been construed by the jury to apply to the second count of assault, the evidence

20   clearly suggested that the gun was loaded when Petitioner pointed it at Gonzales (*i.e.*,  Sayrath's

21   cousin, the victim in count two): Petitioner held a gun to Sayrath's head; he then fired a shot into the

22   air, and Sayrath screamed. (Lodgment No. 5, Rep.'s Tr., vol. 3, 90, 189, 210.)  Gonzales ran to the

23   home and saw Petitioner holding the gun. (Lodgment No. 6, Rep.'s Tr., vol. 4, 351-52, 428-29.)  The

24   weight of the evidence against Petitioner is heavy, which "reduced the likelihood that the jury's

25   decision was influenced by argument." *Darden*, 477 U.S. at 182. Accordingly, similar to the Court

26   of Appeals, this Court finds that the prosecutor's statement did not prejudice Petitioner and did not

27   deny Petitioner a fair trial.   As such, Petitioner does not merit habeas relief under 28 U.S.C. §

28   2254(d)(1) or (d)(2).

## II.   INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner argues that habeas relief must be granted because he was denied his constitutional right to effective assistance of counsel.  Similar to the above, the last State Court to address the merits of this claim was the California Court of Appeal on December 12, 2006.  This Court reviews that decision.  *Ylst v. Nunnemaker*, 501 U.S. at 806.

As noted, to establish ineffective assistance, the petitioner must demonstrate that his or her counsel's performance fell below an objective standard of reasonableness.  *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).  First, the petitioner must show that the attorney's performance was deficient.  *Id.* at 687.  Second, "the [petitioner] must show that the deficient performance prejudiced the defense."  *Id.*  In other words, "[t]here is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* at 694.  Both prongs must be satisfied.

Here, the Court of Appeal rejected Petitioner's ineffective assistance claim, concluding that the prosecutor's closing comment was not improper.  Specifically, the court found, "[d]efense counsel could reasonably have believed that the jury would only understand the statements as applying to count 1, and, therefore, the failure to object did not fall below an objective standard of reasonableness."  (Lodgment No. 13, *People v. Thepsombandith*, No. D047885, slip op. at 11.)  Federal courts have held that the failure to make a meritless objection is not deficient performance and cannot constitute ineffective assistance.  *Jones v. Smith*, 231 F.3d 1227, 1239 n.8 (9th Cir. 2000) (citing *Boag v. Raines*, 769 F.2d 1341, 1344 (9th Cir 1985); accord *Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998).

Furthermore, as discussed above, Petitioner cannot establish that he suffered any prejudice because of the prosecutor's comment.  The State Court concluded that "the evidence was overwhelming that the gun was loaded when Petitioner pointed it at Gonzales.  Therefore, it is not reasonably probable that [he] would have received a more favorable result but for counsel's failure to object to the prosecutor's statement."  (*Id.* (citing *Strickland*, 466 U.S. at 693-94).)  Because Petitioner cannot show that the prosecutor's argument constituted prejudicial misconduct, he cannot show that he was prejudiced by counsel's failure to object.

- 13 -

The State Court's decision was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. *See* 28 U.S.C. § 2254(d)(1). Nor was the decision based upon an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(2). Accordingly, Petitioner is not entitled to habeas relief on this claim.

## III.   DUE PROCESS VIOLATION

Petitioner next argues the Court should grant habeas corpus relief under 28 U.S.C. §2254 because the imposition of the ten-year upper term for the gun enhancement violated his right to due process. (Pet. 7.) Petitioner was sentenced pursuant to California's determinate sentencing law ("DSL"), which directs how judges sentence defendants for certain offenses. California's sentencing scheme proscribes three possible terms of imprisonment: a lower, middle, and upper term. *See, e.g.,* Cal. Penal Code § 12022.5(a) (setting additional and consecutive imprisonment terms of three, four, or ten years).

On January 17, 2006, the trial judge sentenced Petitioner to twenty-four years imprisonment. (Lodgment No. 2, Clerk's Tr., vol. 2, 319.) As to the first count of assault with a firearm (Kathy Sayrath), the court imposed a six-year term and a ten-year enhancement. (Lodgment No. 2, Clerk's Tr., vol. 2, 278.) For the second count of assault with a firearm (Sherry Gonzalez), the court imposed a two-year term and a sixteen-month enhancement. (*Id.*) The court imposed an eight-month term for discharging a firearm in a grossly negligent manner (count three) and a one-year enhancement. (*Id.*) Petitioner was sentenced to one-year imprisonment for assault with serious bodily injury (count six). (*Id.*) The court also imposed one-year enhancements for each of Petitioner's two prison priors under Cal. Penal Code § 667.5(b). (*Id.*; see Cal. Penal Code § 667.5(b) (West Supp. 2009).) The court stayed the sentence on being a felon in possession of a firearm and being a felon in possession of ammunition (counts four and five). (Lodgment No. 2, Clerk's Tr., vol. 2, 278, 319.)

At the time of sentencing, the judge stated his reasons for imposing the ten-year upper term for the gun enhancement:

> As to count one, I'll be imposing the mid term of six years. [¶] On the 12022.5(A) allegation, I am going to impose the upper term of ten years.

> Now, I think this is significant. [¶] I have definite concerns about this defendant. [¶] This is his fourth time of having a gun in his

- 14 -

09cv0518

1
2
3
4

> possession. There were three other times. [¶] Everything that we did to convince him those three other times that you're not to have a gun, obviously, didn't have an impact, and he knew it. [¶] The gun is what makes this so dangerous. [¶] I do think he has a lack of control, and he is dangerous because of that. [¶] So, I think there is a legal basis for that.
>
> I didn't use the priors on the actual 245(B) count one core offense. [¶] So, it's not a double use. I'm using only the 12022.5 allegation. [¶] Not that that would prohibit the court from doing it, but I have chosen to approach it this way. [¶] The fourth time. You can't have the gun, period.

5
6
7
8

(Lodgment No. 7, Rep.'s Tr., vol. 5, 596-97.)

On direct appeal, Petitioner argued the ten-year upper term violated his right to due process

9
10

under *Blakely v. Washington*, 542 U.S. 296 (2004).  (Lodgment No. 9, Appellant's Supplemental

11

Opening Br. 1-2, *People v. Thepsombandith*, No. D047785.)  Petitioner bases his argument, in part,

12

on *Cunningham v. California*, 549 U.S. 270 (2007), which recognized that because an upper term

13

sentence requires findings of additional aggravating circumstances beyond the minimum elements of

14

the offense, "the middle term prescribed in California's statutes, not the upper term, is the relevant

15

statutory maximum."  The California Court of Appeal rejected this contention, as did the California

16

Supreme Court after deciding *People v. Black (Black II)*, 41 Cal. 4th 799 (2007).  (Lodgment No. 15,

17

*People v. Thepsombandith*, No. S149522, order 1); Lodgment No. 16, *People v. Thepsombandith*, No.

18

S149522, order 2.)

19

    A.    *Retroactivity*

20

In *Teague v. Lane*, 489 U.S. 288 (1989), the United States Supreme Court set forth a three-part

21

test for determining when a new procedural rule applies retroactively on collateral review:

22
23
24
25

> First, the court must determine when the defendant's conviction became final.  Second, it must ascertain the legal landscape as it then existed and ask whether the Constitution, as interpreted by the precedent then existing, compels the rule.  That is, the court must decide whether the rule is actually "new."  Finally, if the rule is new, the court must consider whether it falls within either of the two exceptions to nonretroactivity.

26

*Beard v. Banks*, 542 U.S. 406, 411 (2004) (internal citations omitted).  Nonretroactive exceptions

27

include (1) rules forbidding punishment for certain conduct or for defendants of a particular status, and

28

(2) "watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the

1 | criminal proceeding." *Schardt*, 414 F.3d at 1033-34 (quoting *Beard*, 542 U.S. at 416-17).

2 |      Here, the Court must determine whether *Cunningham v. California*, 549 U.S. 270 (2007),

3 | applies retroactively under the *Teague* framework. *Beard*, 542 U.S. at 412 (holding that habeas courts

4 | must analyze *Teague*'s nonretroactivity principle prior to considering the merits whenever a

5 | retroactivity issue is raised). Petitioner's case was pending on direct review when *Cunningham* was

6 | decided in 2007. (Lodgment No. 15, *People v. Thepsombandith*, No. S149522, order 1.) Accordingly,

7 | the Court must move to the second step and decide whether *Cunningham* announced a "new rule"

8 | under *Teague*. The Supreme Court has outlined the analysis required to determine when a "new rule"

9 | has been established.

10 |
11 |
12 |

> In general, . . . a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government. . . . To put it differently, a case announces a new rule if the result was not <u>dictated</u> by precedent existing at the time the defendant's conviction became final.

13 | *Teague*, 489 U.S. at 301 (citations omitted) (emphasis added).

14 |      In a series of cases, the Supreme Court has announced the contours of a defendant's right to

15 | trial by jury regarding facts affecting the sentence. See *Apprendi v. New Jersey*, 530 U.S. 466 (2000);

16 | *Blakely v. Washington*, 542 U.S. 296 (2004); *United States v. Booker*, 543 U.S. 220 (2005).

17 |      In *Apprendi*, the Supreme Court held, "Other than the fact of a prior conviction, any fact that

18 | increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a

19 | jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. In *Blakely*, the Court

20 | applied *Apprendi* and invalidated a sentencing scheme that allowed a judge to increase a defendant's

21 | sentence beyond the statutory maximum based on judicial factfinding. *Blakely*, 542 U.S. at 303.

22 | "[T]he 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose

23 | solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Id.* (citing

24 | *Ring v. Arizona*, 536 U.S. 584, 602 (2002)). The Ninth Circuit has held that both *Apprendi* and

25 | *Blakely* announced new rules of constitutional law. *Schardt*, 414 F.3d at 1038; *Jones v. Smith*, 231

26 | F.3d 1227, 1236 (9th Cir. 2000).

27 |      In *Booker*, the Court invalidated Federal Sentencing Guidelines to the extent they allowed the

28 | judge to make independent factfindings that placed the defendant in a higher sentencing range.

1    *Booker*, 543 U.S. at 233.  "For when a trial judge exercises his discretion to select a specific sentence

2    within a defined range, the defendant has no right to a jury determination of the facts that the judge

3    deems relevant." *Id.* But in *People v. Black (Black I)*, 35 Cal. 4th 1238, vacated, 549 U.S. 1190, the

4    California Supreme Court held that California's DSL was not invalidated by *Blakely*. *Id.* at 1244.

5         At the time Petitioner was sentenced, *Apprendi*, *Blakely*, and *Booker* clearly established that

6    sentencing schemes that raise the maximum term based on facts not found by a jury violate a

7    defendant's due process rights. See *Apprendi*, 530 U.S. 466; *Blakely*, 542 U.S. 296; *Booker*, 543 U.S.

8    220. *Cunningham* applied these precedents when it held that aggravating factors must be submitted

9    to a jury and found beyond a reasonable doubt to preserve a defendant's basic jury-trial right.

10   *Cunningham*, 549 U.S. at 291 (citing *Blakely*, 542 U.S. at 307-08). In *Cunningham*, 549 U.S. 270, the

11   Supreme Court held that DSL violated *Apprendi*'s "bright-line rule" that facts in aggravation must be

12   submitted to a jury and found beyond a reasonable doubt.  *Id.* at 291 (citing *Blakely*, 542 U.S. at

13   307-08).  The Court concluded that California's DSL resembled the sentencing systems invalidated

14   in *Blakely*.  *Id.* at 294.  Therefore, the holdings of *Apprendi*, *Blakely*, *Booker*, and *Cunningham*

15   collectively constitute clearly established federal law.  As held by the Ninth Circuit in *Butler v. Curry*,

16   528 F.3d 624 (9th Cir. 2008), however, this law is not new.

17        In *Butler v. Curry*, 528 F.3d 624 (9th Cir. 2008), the Ninth Circuit held that *Cunningham* did

18   not announce a new rule of constitutional law within the meaning of *Teague* and, therefore,

19   *Cunningham* applies retroactively. *Id.* at 639, cert. denied, *Curry v. Butler*, 77 U.S.L.W. 3359 (U.S.

20   Dec. 15, 2008) (No. 08-517); accord *Wright v. Dexter*, 546 F.3d 1096, 1097 (9th Cir. 2008).

21   Specifically, the Ninth Circuit found that *Apprendi*, *Blakely* and *Booker* compelled the result in

22   *Cunningham*. *Id.* at 635. "*Apprendi*, *Blakely*, and *Booker* made 'courts throughout the land' aware that

23   sentencing schemes that raise the maximum possible term based on facts not found by a jury violate

24   the constitutional rights of defendants." *Id.* at 639 (citing *Teague*, 489 U.S. at 306).  The court further

25   held that "[n]o principles of comity or federalism would be served by refusing to apply this rule to

26   functionally indistinguishable state sentencing schemes on collateral review.  *Cunningham* thus did

27   not announce a new rule of constitutional law and may be applied retroactively on collateral review."

28   *Id.*

- 17 -

09cv0518

1    Therefore, as found by the Ninth Circuit in *Butler*, this Court finds that *Cunningham* is

2    retroactive and applies to the present case.

3          B.    *Habeas Relief*

4    Having decided that *Cunningham* applies to this case, the Court must now determine whether

5    the California Supreme Court's reliance on *Black II* was contrary to "clearly established federal law"

6    such that habeas relief is justified under 28 U.S.C. § 2254(d)(1).

7    Unlike the above, the last reasoned opinion on this issue is the California Supreme Court's

8    decision on September 12, 2007. Thus, this Court analyzes the Supreme Court's decision for purposes

9    of habeas relief under Section 2254(d).

10    In dismissing Petitioner's petition, the California Supreme Court relied on the reasoning in

11    *Black II.* (Lodgment No. 16, *People v. Thepsombandith*, No. S149522, order 2.). In *Black II*, the state

12    court noted, "The United States Supreme Court consistently has stated that the right to a jury trial does

13    not apply to the fact of a prior conviction." *People v. Black (Black II)*, 41 Cal. 4th at 818, 161 P. 3d

14    at 1142, 62 Cal. Rptr. 3d at 583 (citing *Cunningham*, 549 U.S. at 288; *Blakely*, 542 U.S. at 301;

15    *Apprendi*, 530 U.S. at 490; *Almendarez-Torres v. United States*, 523 U.S. 224 (1998).

16    The fact of a prior conviction is relevant here with respect to count one. In sentencing on count

17    one, the trial court stated,

18              On the 12022.5(A) allegation [personally used a firearm], I am
                going to impose the upper term of ten years.
19
                Now, I think this is significant. [¶] I have definite concerns
20    about this defendant. [¶] This is his fourth time of having a gun in his
      possession. There were three other times. [¶] Everything that we did
21    to convince him those three other times that you're not to have a gun,
      obviously, didn't have an impact, and he knew it.
22
                              . . . .
23
                I do think he has a lack of control, and he is dangerous because
24    of that. [¶] So, I think there is a legal basis for that. [¶] I didn't use the
      priors on the actual 245(B) count one core offense. [¶] So, it's not a
25    double use. I'm using only the 12022.5 allegation.

26
      (Lodgment No. 7, *People v. Thepsombandith*, Rep.'s Tr., vol. 5, 596-97.)
27
      Petitioner argues that the prior conviction exception articulated in *Black II* does not apply
28
      because the trial judge did not rely solely on prior convictions. (*Id.* at 18.) Rather, the trial court also

1 considered that Petitioner's lack of control made him dangerous, and he had not been deterred by his
2 prior convictions.  (Traverse 18; Lodgment No. 7, Rep.'s Tr., vol. 5, 597.)

3      Respondent argues the trial court properly relied on Petitioner's prior convictions when
4 imposing the upper term. (Answer Attach. #1 Mem. P. & A. 14.) Respondent cites *Butler*, stating that
5 this finding did not require the trial court to make any "qualitative evaluations of the nature or
6 seriousness of past crimes." (*Id.* (citing *Butler*, 528 F.2d at 644-46).)

7      The United States Supreme Court has recognized two exceptions to a defendant's Sixth
8 Amendment right to a jury trial.  First, a fact admitted by the defendant may be used to increase his
9 or her sentence beyond the maximum. *Blakely*, 542 U.S. at 303. Second, the right to a jury trial and
10 the proof beyond a reasonable doubt requirement do not apply to the fact of a prior conviction. *Id.*;
11 *see Apprendi*, 530 U.S. at 490. The Court finds the second exception applies here.

12      At the time of Petitioner's sentence, he had two prior felony convictions: (1) taking a vehicle
13 while in possession of a gun and (2) being in possession of a firearm while on parole. (Lodgment No.
14 1, Clerk's Tr., vol. 1, 7; Lodgment No. 2, Clerk's Tr., vol. 2, 213; Cal. Penal Code §§ 10851(a),
15 12022(a)(1), 12021(a)(1).)   Separately, he had numerous juvenile adjudications for burglary,
16 possession of a concealed firearm, and two instances of possession of burglary tools. (Lodgment No.
17 2, Clerk's Tr., vol. 2, 212; Cal. Penal Code §§ 459, 12025(b), 466 (West Supp. 2009).)

18      Under *Butler*, "[I]f at least one of the aggravating factors on which the judge relied in
19 sentencing was established in a manner consistent with the Sixth Amendment, [Defendant's] sentence
20 does not violate the Constitution." *Butler*, 528 F.3d at 643. Here, the Court finds that the fact of
21 Petitioner's prior convictions was sufficient by itself to subject him to the upper term.   This
22 aggravating factor could be determined solely by looking at the documents of conviction and was not
23 based solely on qualitative evaluations, the seriousness of his past crimes, or the likelihood of
24 recidivism. *See Butler*, 528 F.3d at 646; *Kortgaard*, 425 F.3d at 607-08. Nor was the determination
25 based solely on Petitioner's juvenile adjudication. *See Butler*, 528 F.3d at 644 (citing *Tighe*, 266 F.3d
26 at 1193-95.)

27      Even if the sentencing judge considered the juvenile adjudication during sentencing, the judge
28 was permitted to rely on the prior gun possessions established by the two remaining convictions.

1  (Lodgment No. 1, Clerk's Tr., vol. 1, 7; Lodgment No. 2, Clerk's Tr., vol. 2, 213.)  Notably, only one

2  aggravating factor is necessary, and there were two adult priors in this case.  *Butler*, 528 F.3d at

3  642-43; (Lodgment No. 1, Clerk's Tr., vol. 1, 7; Lodgment No. 2, Clerk's Tr., vol. 2, 213.)

4      This Court must examine the whole record, including the evidence presented at sentencing.

5  *Butler*, 528 F.3d at 651.  As this Court finds that the sentencing judge had sufficient evidence from

6  which she could find the aggravating factor to justify imposition of the upper term, the Court finds that

7  the California Supreme Court's decision was not contrary to, or an unreasonable application of, clearly

8  established Supreme Court law for purposes of habeas relief under Section 2254(d)(1).  The Court

9  further finds that the State Court decision was based on a reasonable determination of the evidence

10  and, therefore, habeas relief is likewise not justified under Section 2254(d)(2).

11      C.   *Harmless Error*

12      Petitioner is only entitled to habeas relief "if the sentencing error in this case is not harmless."

13  *Butler*, 528 F.3d at 648 (citing *Recuenco*, 548 U.S. at 220).  Here, even if there were a constitutional

14  error, any error was harmless.

15      An error is harmless if it does not have a "substantial and injurious effect on [Defendant's]

16  sentence."  *Butler,* 528 F.3d at 648 (citing *Hoffman v. Arave*, 236 F.3d 523, 540 (9th Cir. 2001)); *see*

17  *also Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).  Furthermore, an error is "harmless if it is not

18  prejudicial as to just one of the aggravating factors at issue."  *Butler*, 528 F.3d at 648.

19      The record illustrates Petitioner was convicted of taking a vehicle while in possession of a gun

20  on December 9, 1994 and sentenced to three years in prison, thereby creating his first prison prior.

21  (Lodgment No. 1, Clerk's Tr., vol. 1, 7; Lodgment No. 2, Clerk's Tr., vol. 2, 213.)  On December 4,

22  1998, he was convicted of being in possession of a firearm while on parole and sentenced to two years

23  in prison, creating his second prison prior.  (*Id.*)  The trial judge was presented with evidence of both

24  prior convictions.  In fact, the trial judge referenced the prior convictions when she imposed the upper

25  term.  "This is his fourth time of having a gun in his possession.  There were three other times."  (*Id.*

26  at 597.)  Furthermore, Petitioner admitted to having the prior convictions.  (Lodgment No. 2, Clerk's

27  Tr. Vol. 2, 307, 314.)  Therefore, any error in using the fact of Petitioner's prior convictions to impose

28  the upper term was harmless because there is no "grave doubt" that the jury would have found the

09cv0518

1    aggravating factors beyond a reasonable doubt. *See O'Neal*, 513 U.S. at 436.

2         In light of the above, the Court finds that Petitioner's allegation of due process violation at

3    sentencing lacks merit and, based thereon, finds that habeas relief under 28 U.S.C. §§ 2254(d)(1) or

4    (2) is not warranted.

5                                    **CONCLUSION**

6         For the reasons set forth above, Petitioner's Petition for Writ of Habeas Corpus is

7    **DENIED**.

8         **IT IS SO ORDERED**.

9

10        DATED: _____, 2009

11                                                      _____
                                                        Hon. Roger T. Benitez
                                                        United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  aggravating factors beyond a reasonable doubt. *See O'Neal*, 513 U.S. at 436.

2      In light of the above, the Court finds that Petitioner's allegation of due process violation at

3  sentencing lacks merit and, based thereon, finds that habeas relief under 28 U.S.C. §§ 2254(d)(1) or

4  (2) is not warranted.

5                                  **CONCLUSION**

6      For the reasons set forth above, Petitioner's Petition for Writ of Habeas Corpus is

7  **DENIED**.

8      **IT IS SO ORDERED**.

9

10  DATED: 12/01      , 2009

11                                          Hon. Roger T. Benitez
                                            United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28